1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Todd Becker – State Bar. No. 127567
Inna S. Demin – State Bar. No. 266737
BECKER LAW GROUP
3750 E. Anaheim Street, Suite 100
Long Beach, CA, 90804
Tel: (562) 495-1500
Fax: (562) 494-8904

Patrick McNicholas – State Bar No. 125868
David Angeloff – State Bar No. 272929
MCNICHOLAS & MCNICHOLAS, LLP
10866 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
Tel:  (310) 474-1582
Fax:  (310) 475-7871

Attorneys for Plaintiffs,
JUNAN CHEN, KELLY YAO WANG, CHANGSHUANG WANG,
JINSHUANG LIU, LICHU CHEN, and WENQUEI HONG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNAN CHEN, KELLY YAO WANG, CHANGSHUANG WANG, JINSHUANG LIU, LICHU CHEN, and WENQUEI HONG,<br><br>Plaintiffs,<br><br>-vs.-<br><br>COUNTY OF SANTA BARBARA; SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT; CAPRI APARTMENTS AT ISLA VISTA; ASSET CAMPUS HOUSING; and DOES 1 through 200, Inclusive,<br><br>Defendants. | Case No.: 2:15-CV-01509<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)**<br><br>**(2) NEGLIGENCE**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiffs, JUNAN CHEN, KELLY YAO WANG, CHANGSHUANG WANG,

JINSHUANG LIU, LICHU CHEN, and WENQUEI HONG, (hereinafter collectively referred to as

1

"Plaintiffs") hereby request a jury trial and allege based upon information and belief as follows:

**JURISDICTION AND VENUE**

1.   This case arises under 42 U.S.C § 1983 and California law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction over Plaintiffs' pendent or supplemental state law claims under 28 U.S.C. § 1367.

2.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that the unlawful actions challenged herein occurred in the Central District.

3.   Plaintiff, JUNAN CHEN (hereinafter referred to as "JUNAN CHEN") was at all times herein mentioned, an individual residing in the city of San Jose, State of California, and was the father of the late George Chen.

4.   Plaintiff, KELLY YAO WANG (hereinafter referred to as "KELLY YAO WANG") was at all times herein mentioned, an individual residing in the city of San Jose, State of California, and was the mother of the late George Chen.

5.   Plaintiff, CHANGSHUANG WANG (hereinafter referred to as "CHANGSHUANG WANG") was at all times herein mentioned, an individual residing in the city of Fremont, State of California, and was the father of the late Weihan "David" Wang.

6.   Plaintiff, JINSHUANG LIU (hereinafter referred to as "JINSHUANG LIU") was at all times herein mentioned, an individual residing in the city of Fremont, State of California, and was the mother of the late Weihan "David" Wang.

7.   Plaintiff, LICHU CHEN (hereinafter referred to as "LICHU CHEN") was at all times herein mentioned, an individual residing in the city of San Jose, State of California, and was the mother of the late Cheng-Yuan "James" Hong.

8.   Plaintiff, WENQUEI HONG (hereinafter referred to as "WENQUEI HONG") was at all times herein mentioned, an individual residing in the city of San Jose, State of California, and was

COMPLAINT FOR DAMAGES

the father of the late Cheng-Yuan "James" Hong.

9. Defendant COUNTY OF SANTA BARBARA (hereinafter referred to as "COUNTY") is a municipality duly organized under the laws of the State of California, whose principal place of business is located in the County of Santa Barbara, State of California. At all relevant times, Defendants Does 1-10 were officers and employees of COUNTY. The COUNTY OF SANTA BARBARA SHERIFF'S DEPARTMENT is a subsidiary of COUNTY. COUNTY is responsible for Plaintiffs' injuries under 42 U.S.C § 1983 because its official policies, practices, and/or customs caused Plaintiffs' injuries. COUNTY is also responsible for the actions of its employees under a respondeat superior theory. Liability under California law for all government entities and/or employees is based upon California Government Code §§ 815.2, and/or 820.

10. Defendant COUNTY OF SANTA BARBARA SHERIFF'S DEPARTMENT (hereinafter referred to as "SBCSD") is a public agency, existing under the laws of the State of California, whose principal place of business is located in the County of Santa Barbara, State of California.

11. At all times, Defendants Does 1-10 were members of the SBCSD and were duly authorized COUNTY employees and agents, acting under the color of their authority within the course and scope of their respective duties as Officers of the Sherriff's Department and with the complete authority and ratification of Defendant COUNTY. True names of Defendants Does 1-10 are unknown to Plaintiffs. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named Defendants is responsible for some part of the conduct of liabilities alleged herein.

12. Defendant CAPRI APARTMENTS AT ISLA VISTA ("CAPRI"), is, and at all times mentioned herein was, a corporation, partnership, joint venture, or other business entity existing under the laws of the State of California and providing services and conducting business in the

State of California with a principal place of business located at 6598 Seville Rd., Isla Vista, CA 93117.

13. Defendant ASSET CAMPUS HOUSING ("ASSET"), is, and at all times mentioned herein was, a corporation, partnership, joint venture, or other business entity existing under the laws of the State of Texas and providing services and conducting business in the State of California with a principal place of business located at 675 Bering Dr., Suite 200, Houston, TX 77057.

14. The true names and capacities of defendants named herein as DOES 1 through 200, inclusive, and each of them, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs who therefore sue such defendants by such fictitious names pursuant to Code of Civil Procedure §474. Plaintiffs are informed and believe that said DOE defendants are California residents. Plaintiffs will amend this Complaint to show the true names and capacities of DOES 1 through 200, inclusive, when the same has been ascertained.

15. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each defendant was the agent, servant and employee of each of the remaining defendants, and in doing the things hereinafter mentioned, each defendant was acting within the course and scope of his employment and authority as such agent, servant and employee and with the consent of his co-defendants.

16. The conduct of each defendant combined and cooperated with the conduct of each of the remaining defendants so as to cause the herein described incidents and the resulting injuries and damages to Plaintiffs.

17. Wherever appearing in this complaint, each and every reference to defendants, or any of them, is intended to include, and shall be deemed to include, all fictitiously named defendants.

18. This Court has personal jurisdiction over the defendants, and each of them, because they are all residents of and/or are doing business in the State of California.

19. Defendant ASSET owns facilities and housing representing 65,000 student's beds throughout the U.S. and manages a student housing portfolio of more than 120 properties, including CAPRI, and is one of the largest privately owned student housing companies in the nation.

20. Defendant CAPRI operates a multi-unit commercial student housing property in Isla Vista that primarily services students of the University of Santa Barbara and Santa Barbara City College.

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION HEREIN

21. On or about June 4, 2011, Elliot Rodger ("Rodger") moved to Isla Vista to attend the summer session at Santa Barbara City College ("SBCC"). Rodger moved into the main Carpi complex on Seville Road (there is another complex on Abrego Road a few blocks away) and was assigned to live in Apt. #7 by CAPRI. CAPRI paired Rodger with two roommates to live with in Apt. #7.

22. During or about August of 2011, after the summer session at SBCC ended, Rodger's roommates moved out and he occupied Apt. #7 alone for approximately a month and then was assigned by CAPRI two new roommates, two males who were Hispanic, who he considered "rowdy, inferior, pig-faced thugs." Within days of their moving in Rodger confronted his new roommates, insulting them and telling them he was superior. One of Rodger's roommates had to be restrained by the other. Rodger went to the leasing manager and "explained everything that happened." Shortly thereafter he signed a lease for another, larger apartment.

23. During or about September 2011, Rodger moved into his new apartment and CAPRI assigned him a new roommate, Spencer Horowitz. After a few weeks Rodger developed a self-described "psychological problem" because Rodger believed Horowitz could "see how pathetic his life was."

24. During or about January 2012, Rodger became enraged because Horowitz brought a girl back to his room. Rodger was furious and jealous because he believed that Horowitz was "chubby" and "even shorter than [he] was." Rodger told Horowitz he was foolish for being proud for having "an ugly whore" in his room. After that they became hostile towards each other and their roommate relationship became unworkable.

25. During or about the Spring of 2012, Rodger dropped his Spring semester classes and barely left his room, brooding over his fate.

26. On or about September 11, 2012, frustrated after he didn't win a lottery jackpot drawing, Rodger "threw a wild tantrum, screaming and crying for hours on end," all the while thrashing the furniture with a wooden practice sword. On information and belief, this screaming was overheard by Rodger's neighbors and the apartment management.

27. During or about September 2012, CAPRI transferred Rodger to Apt. #7 at the main Capri complex on Seville Road, the same apartment he had occupied in June of 2011. Rodger would later write "I trusted that the manager had the sense to pair me with mature people, knowing my experiences with those two barbaric housemates I had to deal with a year previously." After a month CAPRI assigned Rodger two new roommates, whom he described as "timid geeks" who were "quiet, respectful and friendly." Rodger registered for classes and then dropped them.

28. During or about November 2012, after losing the Powerball lottery, Rodger cried for hours and called his parents complaining that he was a 21 year old virgin unable to get a girlfriend or make friends and he expressed he would never be happy. Rodger's parents arranged for him to begin seeing a psychiatrist, Dr. Charles Sophy.

29. During or about November of 2012, Rodger becomes serious about executing the "Day of Retribution," an event he had been planning since his arrival in Santa Barbara in which Rodger planned to massacre young people in the streets of Isla Vista to get "revenge" on them. In his own

words: "It would be a day in which I exact my ultimate retribution and revenge on all of the hedonistic scum who enjoyed lives of pleasure that they don't deserve. If I can't have it, I will destroy it. I will destroy all women because I can never have them. I will make them all suffer for rejecting me. I will arm myself with deadly weapons and wage a war against all women and the men they are attracted to. And I will slaughter them like the animals they are."

30. During or about December of 2012, Rodger purchased a Glock 34 semiautomatic pistol from Goleta Gun & Supply, signing all the paperwork in his own name.

31. During or about April of 2013, Rodger posted hateful, angry, deeply misogynist and racist material under his own name on various websites including but not limited to specific posts on: Wizardchan, a forum for male virgins; PuaHate, a site for failed pickup artists ("Today I drove through the area near my college and saw some things that were extremely rage-inducing; I passed by this restaurant and I saw this black guy chilling with 4 hot white girls. He didn't even look good. Then later on in the day I was shopping at Trader Joe's and saw an Indian guy with 2 above average White Girls!!!; One day incels will realize their true strength and numbers, and will overthrow this oppressive feminist system. Start envisioning a world where WOMEN FEAR YOU."); Bodybuilding.com, a web community for bodybuilding enthusiasts; and his own YouTube channel, where he posted videos of himself ranting in angry and threatening ways. One of the videos posted on Reddit.com spurred commenters to question Rodger's sanity, with one commenter saying "If this isn't a troll, then I bet we find out this guy is a serial killer. I'm getting a strong Patrick Bateman vibe from him." Virtually all of the content Rodger had posted online was easily discoverable with simple Google searches of his name.

32. During or about Spring of 2013, Rodger purchased a Sig Sauer P226 pistol and several boxes of ammunition.

33. On or about July 20, 2013, Rodger went to a party in Isla Vista in an intoxicated state. He became angry at a group of girls he believed was ignoring him, and tried to push some of them off of a ledge. A group of male students intervened, and pushed Rodger off the ledge, breaking his ankle. As he was stumbling away from the party, Rodger realized he lost his Gucci sunglasses during the altercation. The suspect turned around so he could go back to the party and retrieve his sunglasses. Due to his level of alcohol intoxication, the suspect mistakenly went to the wrong house and demanded his sunglasses be returned to him. The occupants of this house called Rodger names and began kicking and punching him. Rodger eventually left this house and fled the area. Rodger returned home, bruised, disheveled, and crying and told a neighbor at the Capri Apartments "I'm gonna kill all those motherf***kers and kill myself."

34. On or about July 21, 2013, Rodger called his father and told him he had been injured. Rodger's father drove up from Los Angeles to take him to the hospital. At the hospital, two SBCSD officers interviewed Rodger, who made up a story that he had been pushed off the ledge by bullies. The officers interviewed other persons who said Rodger was the only aggressor and had targeted women. The police did no further follow up and the matter was dropped.

35. During or about September 2013, following surgery on his ankle and a period of recuperation at his mother's house, Rodger returned to Isla Vista and again moved into Apt. #7 at the Capri apartment complex. Upon his return, CAPRI assigned Cheun-Yuan "James" Hong ("Hong") and Weihan "David" Wang ("Wang") to be Rodger's roommates in Apt. #7. Despite their actual or constructive knowledge of his bizarre behavior and their actual or constructive knowledge of his history of having conflicts with his roommates, CAPRI conducted no reasonable investigation into Rodger before assigning him as Hong and Wang's roommate. CAPRI failed to conduct any kind of reasonable background check or reasonable investigation of Rodger's online postings to ensure that he was an appropriate and safe roommate before assigning him to Hong and

COMPLAINT FOR DAMAGES

Wang. Finally, CAPRI failed to warn Hong and Wang that Rodger had had serious conflicts with his previous roommates and was not only racist but also potentially violent and dangerous. Hong and Wang trusted that CAPRI had conducted a reasonable investigation into Rodger before assigning him as their roommate, and they trusted that he had been vetted as a safe and appropriate roommate by CAPRI.

36. On or about January 15, 2014, Rodger became annoyed at his roommates because he did not like the smell of their cooking. Rodger responded by repeatedly hiding or taking his roommates' pots and pans so they could not cook. Hong and Wang repeatedly asked, and then repeatedly demanded, that Rodger return their property. Eventually, when Rodger did not, Hong took some candles and candle holders that belonged to Rodger and again demanded Rodger return his pots and pans. Rodger responded by placing Hong under "citizen's arrest" and calling the SBCSD. SBCSD officers arrived at Apt. #7, interviewed all parties. Deputies spoke with Hong, who alleged that the suspect took his (Hong's) rice bowls and moved Hong's property around the apartment. SBCSD deputies then proceeded to arrest Hong (the infraction Hong was charged with, 488 PC – Petty Theft, which was ultimately dismissed due to insufficient evidence). At that time, the SBCSD did not conduct any investigation into Rodger based on Hong's statements, did not do a background check on Rodger, did not do a gun check on Rodger, and did not look online to investigate Rodger.

37. During or about early 2014, Rodger started making specific plans to carry out the "Day of Retribution." He set April 26, 2014 as the date. He would later re-set the date to May 23, 2014.

38. During or about April of 2014, Rodger uploaded numerous videos to YouTube which again expressed his jealousy and rage toward women, minorities, and people who are sexually active. These videos, including one titled "Why do girls hate me?", revealed Rodger to be an unstable, vengeful, jealous, and dangerous individual.

39. On or about April 30, 2014, a week after videos were uploaded, SBCSD officers visited Rodger for a "wellness check" based on a call from a mental health worker who saw Rodger's YouTube videos and other online content and believed that Rodger was a danger to himself and others. Recklessly and with deliberate indifference, no one from the SBCSD watched any part of any of the videos, reviewed any of Rodger's other online postings, performed any background check, or performed any gun check before or after speaking to Rodger. At Rodger's apartment, the SBCSD officers spoke to him at his doorstep but failed to even request to enter the apartment or search his room. The officers left after Rodger told them it was a "misunderstanding." This failure on the part of the SBCSD emboldened Rodger and caused him to adapt and expand his plans of violence, creating greater danger than existed previously. As Rodger put it in his manifesto, following the wellness check "If they had demanded to search my room… That would have ended everything. For a few horrible seconds I thought it was all over. When they left, the biggest wave of relief swept over me… This incident made me realize that I needed to be extra careful. I can't let anyone become suspicious of me…" Elliot Rodger's YouTube videos had revealed that he was a specific and preventable threat to the other persons living in his apartment and the SBCSD were possessed of actual or constructive particular knowledge of that fact. Through their conduct, the SBCSD affirmed that Rodger was not dangerous, increasing the existing danger to Hong and Wang and their guests and creating and catalyzing a danger to Hong and Wang which did not exist before.

40. On or about May 23, 2014, Rodger emailed his manifesto to his parents, family friends, and at least one therapist after killing his two roommates (Hong and Wang) and a visiting friend of theirs (Chen) with knives and other weapons in their apartment. Rodger then headed out into Isla Vista to carry out a shooting rampage that left three more people dead and fourteen wounded.

**FIRST CAUSE OF ACTION**

**VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT**

**(42 U.S.C. § 1983)**

**(AGAINST DEFENDANTS COUNTY; SBCSD; AND DOES 1 THROUGH 50, INCLUSIVE)**

41. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained in paragraphs 1 through 40, inclusive, of the Complaint.

42. Defendants recklessly and with deliberate indifference created a dangerous condition by failing to reasonably investigate, reasonably perform any background check, and reasonably investigate the online postings of Rodger as part of conducting his "wellness check" despite the fact that they had been made aware of Rodger's online postings and violent intentions, as further described above.

43. The acts and conduct of Defendants, as described above, were committed under color of state law, pursuant to official written and unwritten policy and custom of COUNTY and SBCSD. Said policy and custom included knowingly failing to adequately investigate individuals subject to a "wellness check," failing to adequately train employees on investigative technique, failing to adequately supervise employees, and failing to warn potential victims about the dangerous propensities of individuals under investigation. COUNTY and SBCSD knew or should have known that serious injury would result from this custom and policy.

44. Defendants COUNTY, SBCSD, and their agents and employees acting on their behalf, were aware of this policy and custom and used their positions to carry out that policy of deliberate indifference in investigations. Defendants' policy and custom of reckless indifference in the investigative process was applied to Hong, Wang, Chen, and others similarly situated, thus violating their rights as guaranteed under the Constitutions of the United States and the State of California. Among other things, defendants deprived Hong, Wang, and Chen of their right to life as

guaranteed as a due process right through the Fifth Amendment and Fourteenth Amendment. Defendants further violated the Plaintiffs' constitutionally protected rights to equal protection under the Fourteenth Amendment of the United Stated Constitution.

45. Defendants knowingly, recklessly, or with deliberate indifference to the Plaintiffs' rights, maintained, fostered, condoned, approved of, and/or ratified an official policy, practice, procedure, or custom of permitting the occurrence of wrongful conduct as descried herein, and/or improperly, inadequately, and with deliberate indifference and reckless disregard to the constitutional or other federal rights of persons, failed to properly train, supervise, monitor, or take corrective action with respect to their employees' wrongful conduct as described herein, so that each one of them is legally responsible for all of the injuries and/or damages sustained by the Plaintiffs.

46. The Plaintiffs have no adequate state remedy, both in form and substance, which would have redressed the wrongful conduct against Plaintiffs or compensate the Plaintiffs for the deprivations they suffered resulting from the conduct of the Defendants.

47. As a direct and legal result of said acts and conduct by Defendants, the Plaintiffs have suffered damages in an amount not presently capable of being ascertained.

48. As a result of Defendants' conduct as alleged herein, the Plaintiffs were required to retain counsel to represent them. Plaintiffs are therefore entitled to an award based on their reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this claim, under 42 U.S.C. § 1988.

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION

## NEGLIGENCE

## (AGAINST DEFENDANTS CAPRI, ASSET, AND DOES 51 THROUGH 100, INCLUSIVE)

49. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained in paragraphs 1 through 48, inclusive, of the Complaint.

50. Defendants CAPRI, ASSET, and DOES 51 through 100 are persons or entities who owed a duty of care to the Plaintiffs and/or to Plaintiffs' children by virtue of the landlord tenant relationship and/or contractual relationship and/or or by virtue of the affirmative action of pairing CAPRI tenants with other roommates.

51. Defendants CAPRI, ASSET, and DOES 51 through 100 knew or should have known of the racial biases, mental illness, and dangerous propensities of Rodger and knew or should have known that it was highly foreseeable he would cause harm to any potential roommates he was paired with, particularly Hong and Wang.

52. Despite having actual or constructive knowledge of the mental illness, racial biases, and dangerous propensities of Rodger, Defendants CAPRI, ASSET, and DOES 51 through 100 negligently assigned Hong and Wang to be roommates with Rodger, failed to take any preventative action to prevent Rodger from causing harm to Hong and Wang, and failed to warn Hong or Wang or their parents of the mental illness, racial biases, and dangerous propensities of Rodger, despite having a legal duty to do so.

53. As a result of the negligence of Defendants CAPRI, ASSET, and DOES 51 through 100, Hong, Wang, and Chen were rendered completely vulnerable to Rodger and were subjected to his violent acts, which caused their deaths.

54. Had said Defendants fulfilled their duties and responsibilities, Hong, Chen, and Wang would not have been subject to all or most of the unlawful and violent acts committed by Rodger.

55. As a result of said Defendants having breached their duty to properly conduct a background check and conduct a reasonable investigation of Rodger, properly monitor their roommate pairings, properly investigate the individuals they were assigning as roommates, and/or warn Hong and Wang of Rodger's unstable and violent demeanor, Hong, Wang, and Chen were rendered completely vulnerable to Rodger and were subjected to his violent acts, which caused their deaths.

56. As a result of the negligence of Defendants CAPRI, ASSET, and DOES 51 through 100, Plaintiffs were damaged emotionally and physically, and otherwise, all to their special and general damages in amounts to be proven at the time of trial.

COMPLAINT FOR DAMAGES

1

2

## **PRAYER FOR RELIEF**

3

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

4

5
 1.     For compensatory and general damages for past, present and future psychological,

6
        emotional and physical pain, suffering, distress and injury;

7
 2.     For medical and incidental expenses in an amount to be proven;

8
 3.     For legal interest on the judgment;

9
 4.     For costs of suit incurred herein;

10
 5.     For reasonable attorneys' fees pursuant to U.S.C. § 1988; and

11
 6.     For such other and further relief as the Court deems just and proper.

12

13
Dated:  March 2, 2015                    McNICHOLAS & McNICHOLAS, LLP

14
                                         BECKER LAW GROUP

15

16
                              By:    /s/ Patrick McNicholas
17                                   Patrick McNicholas
                                     David Angeloff
18                                   Attorneys for Plaintiffs,
                                     JUNAN CHEN, KELLY YAO WANG,
19                                   CHANGSHUANG WANG, JINSHUANG
                                     LIU, LICHU CHEN, and WENQUEI HONG
20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES