Eugene J. Egan (State Bar No. 130108)
  *eje@manningllp.com*
Christopher A. Kanjo (State Bar No. 128015)
  *cak@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendant HI DESERT MOBILE HOME PARK LP (erroneously sued as "CAPRI APARTMENTS AT ISLA VISTA")

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUNAN CHEN, KELLY YAO WANG, CHANGSHUANG WANG, JINSHUANG LIU, LICHU CHEN, and WENQUEI HONG,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA BARBARA; SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT; CAPRI APARTMENTS AT ISLA VISTA; ASSET CAMPUS HOUSING, and DOES 1 through 200, Inclusive,<br><br>Defendants. | Case No. 2:15-CV-01509- JFW (JEMx)<br>[The Hon. John F. Walter]<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANT HI DESERT MOBILE HOME PARK L.P. TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FILED MAY 20, 2015; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: June 29, 2015<br>Time: 1:30 p.m.<br>Ctrm, 16<br><br>Trial Date:  Not Set |

TO PLAINTIFFS JUNAN CHEN, KELLY YAO WANG, HANGSHUANG WANG, JINSHUANG LIU, LICHU CHEN, AND WENQUEI HONG, AND TO THEIR ATTORNEYS OF RECORD HEREIN:

 NOTICE IS HEREBY GIVEN that on the 29th day of June, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 16 of the above-captioned Court, located at 312 North Spring Street, Los Angeles, California, 90012, defendant HI DESERT MOBILE HOME PARK LP (erroneously sued as

1

"CAPRI APARTMENTS AT ISLA VISTA") ("Capri") will move this Court for the following order as to plaintiffs' first amended complaint filed on May 20, 2015:

    1.    For an order dismissing plaintiffs' second cause of action for negligence as against defendant Capri, for failure to state a claim upon which relief can be granted. (Fed.R.Civ.P. 12(b)(6)).

This motion is made and based on this notice of motion, the attached memorandum of points and authorities, the papers and records on file in this action, and upon such additional documents and argument as may be properly before this Court at the time of the hearing on this motion.

This motion is made following the conference of counsel, pursuant to L.R. 7-3 and Section 5.b. of this Court's standing order, which took place on May 26, 2015.

DATED: May 27, 2015        **MANNING & KASS**
                                       **ELLROD, RAMIREZ, TRESTER LLP**

By:    /s/ Eugene J. Egan
       Eugene J. Egan, Esq.
       Attorneys for Defendant
       HI DESERT MOBILE HOME PARK LP
       (erroneously sued as "CAPRI APARTMENTS AT ISLA VISTA")

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. SUMMARY OF THE ALLEGATIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT .................................................................................. 1

III. THE COURT SHOULD DISMISS PLAINTIFF'S CAUSE OF ACTION FOR NEGLIGENCE AS AGAINST DEFENDANT ....................... 5

    A. Defendant Had No Actual Knowledge Of Rodger's Propensity For Violence ................................................................................................ 5

    B. Plaintiffs' Allegations As To Defendant's Actual Knowledge Are Conclusory And Self-Contradictory ...................................................... 6

    C. Plaintiffs' First Amended Complaint Does Not Allege A Plausible Claim For Relief Against Defendant ..................................... 7

        1. Incidents In August of 2011 (Hispanic Roommates) and January of 2012 (Horowitz) ............................................................ 9

        2. Incidents of September 11, 2012 and July 20, 2013 .................. 10

        3. Incidents of January 15, 2014 and April 30, 2014 Involving Law Enforcement ...................................................... 11

IV. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

Andrews v. Mobile Aire Estates, 125 Cal.App.4th 578 (2005) .................................. 9

Ashcroft v. Iqbal, 556 U.S. 662, 677-678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................................................................................................... 8, 9, 10

Barber v. Chang, 151 Cal. App. 4th 1456, 1464 (2007) ............................................ 6

Castaneda v. Olsher, 41 Cal.4th 1205, 1213 (2007) .................................................. 6

Delgado v. Trax Bar & Grill, 36 Cal. 4th 224, 237 (2005) ........................................ 6

Margaret W. v. Kelley R., 139 Cal. App. 4th 141, 156 (2006) ................................... 6

Waldo v. Eli Lilly & Co., 2013 WL 5554623, 2013 U.S. Dist. LEXIS 145772, *15 (E.D. Cal. Oct. 7, 2013) ................................................................................ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The allegations of plaintiffs' first amended complaint fail to demonstrate a plausible claim for relief against defendant Capri for negligence, the only cause of action alleged against it. Plaintiffs' allegations are insufficient to support the imposition of a duty upon defendant Capri to protect plaintiffs' decedents from Rodger's criminal acts. Plaintiffs' allegations concerning defendant Capri's actual knowledge of Rodger's propensity for violence are conclusory and not supported by sufficient factual allegations.

Accordingly, this Court should grant defendant Capri's motion to dismiss as to plaintiffs' first amended complaint.

## II. SUMMARY OF THE ALLEGATIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT

In their first amended complaint for damages filed on May 20, 2015, plaintiffs allege that they are the surviving parents of George Chen ("Chen"), David Wang ("Wang"), and James Hong ("Hong") [¶¶3-8][1], who were all killed in the apartment of Wang and Hong on May 23, 2014, by roommate Elliot Rodger ("Rodger"). [¶41].

Defendant HI DESERT MOBILE HOME PARK LP, sued and served herein as defendant Capri Apartments at Isla Vista ("defendant"), operates a multi-unit student housing property in Isla Vista ("IV") that primarily services students of the University of Santa Barbara and Santa Barbara City College ("SBCC") [¶20], which included Apt. 7 on Seville Road [¶21], where Rodgers was assigned to live with Hong and Wang in September of 2013. [¶36]. Plaintiffs further allege that co-

---

[1] All subsequent bracketed references will be to plaintiffs' first amended complaint filed on May 20, 2015 (Doc. 35) unless otherwise noted.

defendant Asset Campus Housing managed defendant's student housing property. [¶19].

Plaintiffs assert a cause of action for negligence against defendant, seeking general and special damages for plaintiffs' resulting emotional and physical damages. [¶57].

On June 4, 2011, Rodger moved to IV to attend the summer session at SBCC. [¶21]. Defendant paired Rodger with two roommates to live with in Apt. 7 in the main Capri complex on Seville Road. [¶21].

In August 2011, after the summer session ended at SBCC, Rodger's roommates moved out and Rodger lived in Apt. 7 alone for about a month. [¶22]. Then defendant assigned two new roommates, both male Hispanics, to Apt. 7. [¶22]. Rodger considered them to be "rowdy, inferior, pig-faced thugs" [¶22]. Within days after they moved in, Rodger confronted these roommates, insulting them and telling them that he was superior. [¶22]. One of Rodger's roommates had to be restrained by the other. [¶22]. Rodger went to the leasing manager and explained everything that had happened. [¶22]. Shortly thereafter, Rodger signed a lease for another, larger apartment. [¶22].

In September of 2011, Rodger moved into his new apartment and Capri assigned Spencer Horowitz ("Horowitz") as his roommate. [¶23]. After a few weeks Rodger developed a self-described "psychological problem" because Rodger believed that Horowitz could see how pathetic Rodger's life was. [¶23].

In January of 2012, Rodger became enraged when Horowitz brought a girl back to his room. [¶24] Rodger was furious and jealous because he believed that Horowitz was "chubby" and "even shorter than [he] was". [¶24] Rodger told Horowitz that he was foolish for being so proud of having "an ugly whore" in his room. [¶24]. Afterwards, Rodger and Horowitz became hostile toward each other and their roommate relationship became unworkable. [¶24].

On information and belief, plaintiffs allege that in January of 2012, Horowitz

2

began to fear for his personal safety.  Horowitz informed his father that he believed Rodger to be mentally ill and posed a threat of violence.  [¶25].  Horowitz and his father began taking action to remove Horowitz from his living situation due to the danger posed by Rodger.  [¶25].  Horowitz and his father communicated to Capri, both in in-person meetings and through written correspondence, that Rodger was a threat and posed a danger to Horowitz.  [¶25].  Horowitz and his father eventually arranged for Horowitz to move out of the apartment and find other living accommodations.  [¶25].

On September 11, 2012, Rodger "threw a wild tantrum, screaming and crying for hours on end", all the while thrashing the furniture with a wooden practice sword, frustrated after he did not win a lottery jackpot drawing.  [¶27].  On information and belief plaintiffs allege that Rodger's screaming was overheard by Rodger's neighbors and the apartment manager.  [¶27].

In September 2012, Capri transferred Rodger back to Apartment # 7 on Seville Road.  [¶28].  Rodger later wrote "I trusted that the manager had the sense to pair me with mature people, knowing my experiences with those two barbaric housemates I had to deal with a year previously."  [¶28].

After about a month (October of 2012), CAPRI assigned Rodger two new roommates, whom he described as "timid geeks" who were "quiet, respectful and friendly".  [¶28].  Rodger registered for classes and then dropped them.  [¶28].

In November of 2012, after losing the Powerball lottery, Rodger cried for hours and called his parents complaining that he was a 21 year old virgin, unable to get a girlfriend or make friends, and expressed that he would never be happy.  [¶29]. Rodger's parents arranged for him to begin seeing a psychiatrist.  [¶29].

In April of 2013, Rodger posted hateful, angry, deeply misogynist and racist material under his own name on various websites.  [¶32].  Virtually all of the content Rodger had posted online was easily discoverable with simple Google searches of his name. [¶32].

1    On July 20, 2013, Rodger went to a party in IV in an intoxicated state. [¶34].
2 He became angry at a group of girls whom he believed were ignoring him, and tried
3 to push some of them off a ledge. [¶34].  A group of male students intervened and
4 pushed Rodgers off the ledge, breaking his ankle. [¶34]  As he stumbled away from
5 the party, Rodger realized that he had lost his Gucci sunglasses during the
6 altercation. [¶34].  Rodger went to the wrong house and demanded his sunglasses
7 back. [¶34].  The occupants of this house called Rodger names and began kicking
8 and punching him. [¶34].  Rodger left this house and fled the area. [¶34].  Rodger
9 returned home bruised, disheveled and crying, and told a neighbor at the Capri
10 Apartments "I'm gonna kill all those motherf***kers and kill myself." [¶34].
11 Plaintiffs allege on information and belief that this conversation was overheard by
12 Rodgers' neighbors and the apartment manager. [¶34].
13   On July 21, 2013, Rodger called his father to tell him that he has been injured.
14 [¶35].  Rodger's father drove up from Los Angeles to take him to the hospital.
15 [¶35].  At the hospital, Rodger was interviewed by two SBCSD officers. [¶35].
16 Rodger made up a story that he had been pushed off the ledge by bullies. [¶35].  The
17 officers interviewed others who said that Rodger was the only aggressor and had
18 targeted women. [¶35].  The officers did no further follow up and the matter was
19 dropped. [¶35].
20   In September of 2013, after surgery on his ankle and a period of recuperation
21 at his mother's house, Rodger returned to Apt. 7. [¶36].  Capri assigned Hong and
22 Wang as his roommates in Apt. 7. [¶36].
23   On January 15, 2014, Rodger became annoyed at his roommates because he
24 did not like the smell of their cooking. [¶37].  Rodger responded by repeatedly
25 hiding or taking their pots and pans so they could not cook. [¶37].  Hong and Wang
26 repeatedly asked, and then repeatedly demanded, the return of their property. [¶37].
27 Eventually, when Rodger did not comply, Hong took Rodger's candles and candle
28 holders and again demanded the return of his pots and pans. [¶37].  Rodger then

4

place Hong under citizen's arrest and Rodger called the SBCSD. [¶37]. After the officers arrived at Apt. 7 and interviewed all parties, the officers arrested Hong for an infraction (petty theft). [¶37] This charge against Hong was ultimately dismissed due to insufficient evidence. [¶37]. Plaintiffs allege on information and belief that defendant was aware that law enforcement officer had come to Apt. 7 due to a dispute between Rodger and his roommates. [¶37].

In April of 2014, Rodger uploaded numerous videos to YouTube expressing his jealousy and rage toward women, minorities, and sexually active people. [¶39].

On April 30, 2014, SBCSD officers visit Rodger for a "wellness check" in response to a call by a mental health worker who had seen Rodgers' online content. [¶40]. The officers spoke to Rodgers at the doorstep of the apartment but did not ask to enter the apartment or search his room. [¶40]. The officers left after Rodgers told them that it was a misunderstanding. [¶40]. Plaintiffs allege on information and belief that defendant was aware that law enforcement officers had come to Apt. 7 to conduct a welfare check on Rodger. [¶40].

On May 23, 2014, Rodger killed Hong and Wang, and their visiting friend Chen, with knives and other weapons in Apt. 7. [¶41]. Rodger then emailed his manifesto to his parents, family friends, and at least one therapist. [¶41]. Rodger then headed out to IV and carried out a shooting rampage that left 3 more people dead and 14 wounded. [¶41].

## III. THE COURT SHOULD DISMISS PLAINTIFF'S CAUSE OF ACTION FOR NEGLIGENCE AS AGAINST DEFENDANT

### A. Defendant Had No Actual Knowledge Of Rodger's Propensity For Violence

"A landlord generally owes a tenant the duty, arising out of their special relationship, to take reasonable measures to secure areas under the landlord's control against foreseeable criminal acts of third parties. [citations]. In each case...the existence and scope of a property owner's duty to protect against third party crime is

a question of law for the court to resolve. [citations]." Castaneda v. Olsher, 41 Cal.4th 1205, 1213 (2007).

[F]oreseeability is a "crucial factor" in determining the existence and scope of a legal duty [citation][fn. omitted] and... '[f]oreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court' [citation]." Delgado v. Trax Bar & Grill, 36 Cal. 4th 224, 237 (2005). "'[W]hen the third party crime is committed by a tenant, foreseeability turns on whether the landlord had "notice of [the tenant's] propensity for violence." [citations]." Barber v. Chang, 151 Cal. App. 4th 1456, 1464 (2007). "What is apparent from all these cases analyzing defendants' liability for the criminal conduct of a third party is that foreseeability is the crucial factor [citation] and that—no matter whether a heightened or lesser degree of foreseeability was required and no matter whether the actual crime committed or only similar conduct needed to be foreseen—*foreseeability must be measured by what the defendant actually knew.* None of these cases has held that a defendant owed a duty to take steps to prevent or respond to third party crime on the basis of constructive knowledge or information the defendant should have known. We are not aware of any case involving liability for third party criminal conduct that has held that a special relationship creates a duty to investigate or that has charged a defendant with making forecasts based on the information such an investigation might have revealed." Margaret W. v. Kelley R., 139 Cal. App. 4th 141, 156 (2006) (emphasis added).[2]

### B. Plaintiffs' Allegations As To Defendant's Actual Knowledge Are Conclusory And Self-Contradictory

Plaintiffs allege that defendant had actual knowledge of (1) Rodger's "bizarre

---

[2] Thus, to the extent that plaintiffs allege that defendant had "constructive knowledge" of Rodger's bizarre behavior [¶36], history of conflicts with his roommates [¶36], racial biases, mental illness, and dangerous propensities [¶¶ 36, 52], this constructive knowledge does not impose any duty upon defendant.

6

behavior" [¶36], (2) Rodgers' racial biases, mental illness, and dangerous propensities [¶¶ 52, 53], (3) Rodger's history of conflicts with his roommates [¶36], and (4) that Rodger was a violent and dangerous threat to his roommates [¶¶ 36, 52] who "would cause harm to any potential roommates he was paired with, particularly Hong and Wang" [¶52].

Plaintiffs' allegation that Rodger would cause harm to "any potential roommates he was paired with" [¶52], is contradicted by plaintiffs' allegation that in October of 2012, Rodger was assigned two new roommates. [¶28] Rodger described these two roommates as "'timid geeks' who were 'quiet, respectful and friendly'". [¶28] There are no allegations that Rodger posed a threat to these two roommates in plaintiff's first amended complaint, and Rodger appears to have been paired with these two roommates for almost one year, until September of 2013, when Rodger was paired with Hong and Wang. [¶36].

Plaintiffs' allegation of Rodger's "bizarre behavior" [¶36], is contradicted by the allegation that during the dispute with Hong and Wang on January 15, 2015, Rodger placed Hong under citizen's arrest and called the SBCSD. [¶37]. Rodger's act of calling the police was not bizarre behavior, nor the act of a person who had a propensity toward violence. And after the SBCSD officers interviewed the parties, Hong, not Rodger, was arrested. [¶37].

### C. Plaintiffs' First Amended Complaint Does Not Allege A Plausible Claim For Relief Against Defendant

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in <u>Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [citations]. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [citation].

Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' [citation]." Ashcroft v. Iqbal, 556 U.S. 662, 677-678,129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [citation].  Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [citation].   Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [citation].  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.' [citation]." Ashcroft, supra, 556 U.S. at 678-679.

"In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft, supra, 556 U.S. at 679.

While plaintiffs' first amended complaint contains allegations as to numerous incidents involving Rodger, plaintiffs' first amended complaint refers only to six of those incidents to support their claim that defendant Capri had actual knowledge of Rodger's propensity for violence.

### 1. Incidents In August of 2011 (Hispanic Roommates) and January of 2012 (Horowitz)

Plaintiffs allege that Rodger told the leasing manager everything that had happened concerning his confrontation with his two male Hispanic roommates in August of 2011. [¶ 22]. Plaintiffs further allege that in January of 2012, Horowitz and his father communicated to defendant, both in in-person meetings and through written correspondence, that Rodger was a threat and posed a danger to Horowitz. [¶25].

*Assuming arguendo* that defendant had actual knowledge (1) of Rodger's insults, statements, and racial epithets in August of 2011 toward his two male Hispanic roommates, and (2) Rodger's rage, jealousy, and verbal abuse in January of 2012 toward Horowitz regarding the latter's girlfriend [¶24], it did not put defendant on actual notice that Rodger had a propensity for violence toward his roommates.

In Andrews v. Mobile Aire Estates, 125 Cal.App.4th 578 (2005), the court held that one tenant's harassing and annoying behavior toward another tenant, which included "using racial epithets and other verbal abuse" [Andrews, supra, 125 Cal.App.4th at 596], "did not make his battery of the neighbor sufficiently foreseeable for imposition of a tort duty; it did not 'put defendants on notice of [the assailant's] propensity for violence.' [citation]." Andrews, supra, 125 Cal.App.4th at 596.

Plaintiffs further allege that in January of 2012, after Rodger insulted Horowitz's girlfriend, Horowitz and Rodger "became hostile towards each other and their roommate relationship became unworkable" [¶24], that "Horowitz began to fear for his personal safety", "believed Rodger was mentally ill and posed a 'threat' of violence", and that "Rodger was a threat and that he posed a danger to Horowitz" [¶25]. *Assuming arguendo* that these allegations are sufficiently well-pled factual allegations to assume the veracity thereof, to necessitate a determination of whether they plausibly give rise to an entitlement to relief [Ashcroft, supra, 556 U.S. at 679],

9

the question then arises whether the opinions expressed by Horowitz and his father two and an half years prior to the incident, and while seeking a new living arrangement for Horowitz, plausibly give rise to an entitlement to relief against defendant for Rodger killing Hong, Wang, and Chen.  The "context" of this incident [Ashcroft, supra, 556 U.S. at 679] was a dispute between two male college students (Rodger and Horowitz) where one had a female companion and the other did not.  Judicial experience and common sense inform that the reasonably foreseeable threat of violence was fisticuffs between Rodger and Horowitz; a city-wide rampage commencing at the apartment leaving 6 people dead and 14 wounded was not the threat reasonably to have been foreseen.  "[W]here the well-pleaded facts do not permit the court to infer *more than the mere possibility of misconduct*, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief."  Ashcroft, supra, 556 U.S. at 679.

Accordingly, the Court should determine that these roommate incidents did not put defendant on actual notice that Rodger had a propensity for violence toward his roommates sufficient to support the imposition of a duty upon defendant to protect plaintiffs' decedents from Rodger's onslaught of criminal acts.

### 2.     Incidents of September 11, 2012 and July 20, 2013

Plaintiffs allege on information and belief that the apartment manager (1) "overheard" Rodger screaming for hours on end in his apartment on September 11, 2012, when he did not win a lottery jackpot drawing [¶ 26], and (2) "overheard" Rodger crying and telling a neighbor at the Capri Apartments on July 20, 2013, "I'm gonna kill all those motherf***kers and kill myself", after Rodger returned from the party in IV.  [¶34].

"[D]istrict courts may properly consider allegations pled on information and belief in determining whether claims have been adequately pled under Rule 8. That an allegation is pled on information and belief is neither dispositive nor particularly germane. Per Iqbal and Twombly, the proper inquiry remains whether the plaintiff

10

has presented a non-conclusory factual allegation." Waldo v. Eli Lilly & Co., 2013 WL 5554623, 2013 U.S. Dist. LEXIS 145772, *15 (E.D. Cal. Oct. 7, 2013).

Plaintiffs have alleged no facts as to what the circumstances were which support the conclusory allegations that (1) Rodger's screaming on September 11, 2012, was "overheard" by the apartment manager, and that (2) Rodger's conversation with the neighbor on July 20, 2013, was "overheard" by the apartment manager.

Accordingly, the Court should determine that these incidents did not put defendant on actual notice that Rodger had a propensity for violence toward his roommates sufficient to support the imposition of a duty upon defendant to protect plaintiffs' decedents from Rodgers' criminal acts.

### 3. Incidents of January 15, 2014 and April 30, 2014 Involving Law Enforcement

Plaintiffs further allege on information and belief that (1) defendant was "aware" that law enforcement officers had come to Apt. 7 on January 15, 2014, due to a dispute between Rodger, Hong, and Wang [¶37], and that (2) defendant was "aware" that law enforcement officers had come to Apt. 7 on April 30, 2014, to conduct a welfare check on Rodger. [¶40].

Once again, plaintiffs allege no facts demonstrating what the circumstances were to support the conclusory allegation that defendant was "aware" of the law enforcement visits on January 15, 2014 or on April 30, 2014. Waldo v. Eli Lilly & Co., 2013 WL 5554623, 2013 U.S. Dist. LEXIS 145772, *15 (E.D. Cal. Oct. 7, 2013).

Accordingly, the Court should determine that these incidents involving law enforcement did not put defendant on actual notice that Rodger had a propensity for violence toward his roommates sufficient to support the imposition of a duty upon defendant to protect plaintiffs' decedents from Rodgers' criminal acts.

## IV. CONCLUSION

For the foregoing reasons, this Court should sustain defendant's motion to dismiss plaintiffs' first amended complaint.

DATED: May 27, 2015

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Eugene J. Egan
Eugene J. Egan, Esq.
Attorneys for Defendant HI DESERT MOBILE HOME PARK LP (erroneously sued as "CAPRI APARTMENTS AT ISLA VISTA")