MICHAEL C. GHIZZONI, COUNTY COUNSEL
MARY PAT BARRY, SR. DEPUTY (Bar No. 148354)
COUNTY OF SANTA BARBARA
105 E. Anapamu St., Suite 201
Santa Barbara, CA 93101
(805) 568-2950 / FAX: (805) 568-2983
E-mail: mpbarry@co.santa-barbara.ca.us

Attorneys for Defendants
COUNTY OF SANTA BARBARA and
SANTA BARBARA COUNTY SHERIFF'S DEPT.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNAN CHEN, KELLY YAO WANG, CHANGSHUANG WANG, JINSHUANG LIU, LICHU CHEN, and WENQUEI HONG,<br><br>          Plaintiffs,<br><br>v.<br><br><br>COUNTY OF SANTA BARBARA; SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT; CAPRI APARTMENTS AT ISLA VISTA; ASSET CAMPUS HOUSING; and DOES 1 through 200, Inclusive<br><br>          Defendants. | Case No: 2:15-cv-01509-JFW (JEMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS COUNTY OF SANTA BARBARA AND SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT**<br><br>[**Fed. R. Civ. P. 12(c)**]<br><br>Hearing Date: October 26, 2015<br>Hearing Time: 1:30 p.m.<br><br>Judge:  Hon. John F. Walter<br>Courtroom:   16 – Spring Street Fl.<br><br>Trial Date: 04/26/16<br>FPTC Date: 04/08/16<br>Discovery Cut-off Date: 02/16/16 |

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**
i.

# **TABLE OF CONTENTS**

INTRODUCTION………………….......................................................... 1

STATEMENT OF PERTINENT ALLEGED FACTS ...................................... 2

ARGUMENT…………………….......................................................... 5

  I.    LEGAL STANDARD.............................................................. 5

  II.   THIS MOTION IS TIMELY............................................................... 7

  III.  PLAINTIFFS' FIRST CAUSE OF ACTION ALLEGING
       VIOLATION OF FOURTEENTH AMENDMENT DUE
       PROCESS UNDER 42 U.S.C. § 1983 FAILS TO
       STATE A CLAIM UPON WHICH RELIEF MAY
       BE GRANTED…………................................................................. 8

      A.  Plaintiffs Fail to Allege a Violation of Due Process
          under the Fourteenth Amendment to the
          United States Constitution ................................................. 8

          1.  The Special-Relationship Exception Does Not
              Apply Because the County Did Not Impose Any
              Limitation on Plaintiffs' Sons' Freedom to Act on
              Their Own Behalf. ...................................................... 9

          2.  The State-Created Danger Exception Does Not
               Apply Because the County Neither Acted
               Affirmatively to Place Plaintiffs' Sons in Danger
               Nor Acted with Deliberate Indifference to a
               Known or Obvious Danger.............................................. 10

              a.   Plaintiffs Allege No Affirmative Action by
                   the County Placing Hong, Wang, or Chen in
                   Danger. ............................................................. 10

              b.   Plaintiffs Fail to Allege Deliberate Indifference......20

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
ii.

B.   Plaintiffs' Failure to Allege a Constitutional Violation Defeats the Effort to State a § 1983 Monell Claim against the County……………..................................................................22

CONCLUSION……………… ..................................................................23

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......................... 6, 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......................... 6

*Bryan County v Brown*,
  520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ........................... 20

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ....................................................... 6

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ...................................................... 5

*DeShaney v. Winnebago County Dep't of Social Services*,
  489 U.S. 189,109 S.Ct. 998,
  103 L.Ed.2d 249 (1989) .......................... 1, 2, 8, 9, 10, 11, 12, 15, 16, 18, 19

*Fleming v. Pickard*,
  581 F.3d 922 (9th Cir. 2009) ....................................................... 6

*Huffman v. County of Los Angeles*,
  147 F.3d 1054, 1059 (9th Cir. 1998) ............................................. 19, 21

*In re Villegas*,
  132 B.R. 742 (B.A.P. 9th Cir. 1991) .............................................. 7

*Johnson v. City of Seattle*,
  474 F.3d 634 (9th Cir. 2007) ............................... 8, 10, 14, 15, 16, 19, 20, 23

*Kennedy v. City of Ridgefield*,
  439 F.3d 1055 (9th Cir. 2006) ...................................... 10, 12, 14, 16, 18, 21

*L.W. v. Grubbs*,
  92 F.3d 894 (9th Cir. 1996) ........................................................ 21

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

*L.W. v. Grubbs*,
   974 F.2d 119 (9th Cir. 1992) ........................................................... 12, 13, 14

*Lewis v. County of San Bernardino*,
   Case No. EDCV-11-01594 VAP (OPx),
   2011 WL 6288100 (C.D. Cal. Dec. 14, 2011) ........................................... 16

*Martinez v. California*,
   444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) .................................. 8

*Monell v. Dep't of Social Services of City of New York*,
   436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978) .............................. 23

*Moyo v. Gomez*,
   40 F.3d 982 (9th Cir. 1994) ............................................................... 6

*Munger v. City of Glasgow Police Dep't*,
   227 F.3d 1082 (9th Cir. 2000) .............................................. 12, 13, 14, 17, 23

*Norcal Gold, Inc. v. Laubly*,
   543 F.Supp.2d 1132 (E.D. Cal. 2008) .................................................... 7

*Patel v. Kent School District*,
   648 F.3d 965 (9th Cir. 2011) ............................................... 9, 10, 20, 21, 22

*Penilla v. City of Huntington Park*,
   115 F.3d 707 (9th Cir. 1997) ................................................. 12, 13, 14, 16, 19

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) .................... 1, 2, 5, 9

*Wood v. Ostrander*,
   879 F.2d 583 (9th Cir. 1989) ........................................................... 12, 13

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

# **FEDERAL STATUTES**

Federal Rules
    42 U.S.C. Section 1983 ........................................................2, 8, 13, 22, 23

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................ 6
    Rule 12(c) ...........................................................................5, 6, 7

# **STATE STATUTES**

California Penal Code
    Section 847(a).......................................................................... 4
    Section 11106.4 ........................................................................17

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

"Poor Joshua!" These two words memorably encapsulate United States Supreme Court Justice Blackmun's lament in dissent in *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 213,109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The poignancy of these words and the context in which they were written serve as powerful reminder that our United States Constitution does not protect against all wrongs. As decided in *DeShaney,* even when, as here, a case presents "undeniably tragic" facts, facts that engender a sympathetic impulse to make things right, the law of limited Constitutional protections must be followed and applied. *DeShaney,* 489 U.S. at 202-203.

Holding to these constitutional limits, when confronted with horrible facts of harm done by one person against another, the Supreme Court has repeatedly refused to bend to emotion. The Court takes a firm stance in refusing to substitute the state as a target for blame that rightly lies with another. *Id.*; *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 768, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005).

That firm stance must hold here, where Plaintiffs bring suit seeking to substitute the County of Santa Barbara and its Sheriff's Department as a target for blame that rightly lies with Elliot Rodger. On May 23, 2014, Elliot Rodger went on a long-planned murderous rampage in Isla Vista, California. His acts of slaughter and destruction began in his own apartment when he used knives to murder his two housemates, James Hong and David Wang, and their visiting friend, George Chen. Rodger's self-described "Day of Retribution" continued with Rodger shooting indiscriminately at people in Isla Vista, killing three and wounding fourteen. Plaintiffs, the parents of Mr. Hong, Mr. Wang, and Mr. Chen, seek to substitute the County of Santa Barbara and its Sheriff's

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

Department as the target for blame. Plaintiffs base their effort on a "wellness check" conducted by County of Santa Barbara Sheriff's deputies over three weeks prior to Rodger's rampage. Effectively, Plaintiffs seek to hold the County of Santa Barbara accountable for Rodger's crimes on the theory that better policing might have prevented Rodger from executing his murders. To Plaintiffs, actions County Sheriff's deputies failed to take during the wellness check appear "calamitous in hindsight." Even if this were true, the Fourteenth Amendment does not transform the County of Santa Barbara's conduct into a constitutional violation. *DeShaney,* 489 U.S. at 202; *Town of Castle Rock,* 545 U.S. at 768-69.

Here, it is human to cry "Poor James! Poor David! Poor George!"  It is also right for this Court to dismiss Plaintiffs' claims brought under 42 U.S.C. § 1983. The Supreme Court has recognized that the limits of the Fourteenth Amendment's Due Process Clause do not extend to allow liability against the County of Santa Barbara or its Sheriff's Department for the evil acts of Elliot Rodger. The Supreme Court's steady commitment to limiting the protections of the Due Process Clause of the Fourteenth Amendment in cases like this warrants dismissal of Plaintiffs' civil rights claims.

## STATEMENT OF PERTINENT ALLEGED FACTS

Plaintiffs Junan Chen, Kelly Yao Wang, Changshuang Wang, Jinshuang Liu, Lichu Chen, and Wenquei Hong (collectively "Plaintiffs") allege the following facts pertinent to their claims against the moving defendants, as set forth in their First Amended Complaint:

On May 23, 2014, Plaintiffs' sons Cheng-Yuan "James" Hong ("Hong"), Weihan "David" Wang ("Wang"), and George Chen ("Chen"), were murdered by Elliot Rodger ("Rodger") in Isla Vista, California. The murders took place in the apartment Rodger shared with Hong and Wang. First Amended Complaint

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
2.

1   ("FAC"), ¶ 41. Hong and Wang had been Rodger's housemates since September

2   2013. FAC, ¶ 36. Chen was Hong's and Wang's visiting friend. FAC, ¶ 41.

3       For almost three years prior to May 23, 2014, Rodger had been living in

4   Isla Vista and planning a "Day of Retribution."  FAC, ¶¶ 21, 30. He planned to

5   arm himself with deadly weapons and "wage a war against all women and he

6   men they are attracted to." On the "Day of Retribution," Rodger intended to

7   massacre young people in Isla Vista's streets. Rodger's planning begin in June

8   2011 and by November 2012, he was serious about executing his rampage.

9   FAC, ¶ 30. In early 2014, Rodger began making specific plans to carry out his

10   "Day of Retribution." As part of his planning, he set a specific date of April 26,

11   2014 for his rampage and later changed it to May 23, 2014. FAC, ¶ 38.

12       Rodger carried out his plan to arm himself with deadly weapons. He

13   bought a semi-automatic Glock 34 in December 2012 (FAC, ¶ 31) and a Sig

14   Sauer P226 pistol in the Spring of 2013. FAC, ¶ 33. Over a year before his May

15   23, 2014 rampage, Rodger posted speech expressing hateful, angry, deeply

16   misogynist and racist content on various websites using his name. Those

17   websites included an internet forum for male virgins; a site for failed pick-up

18   artists; a site for bodybuilders; and Rodger's own YouTube channel. FAC, ¶ 32.

19       During the period of time after his handgun purchases and internet

20   postings, but before his May 23, 2014 rampage, Santa Barbara County Sheriff's

21   Office ("SBSO") deputies encountered Rodger three times.

22       The first SBSO contact, which took place on <u>July 21, 2013</u>, concerned a

23   reported altercation at an Isla Vista party on July 20, 2013 during which Rodger

24   broke his ankle. SBSO interviewed Rodger at the hospital and interviewed

25   others. The information gathered from Rodger and from the other witnesses

26   directly conflicted on the subject of who the aggressor was during the

27   //

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

altercation. After conducting interviews and discovering the conflicting stories, SBSO did no further investigation. FAC, ¶ 35.

The second SBSO contact occurred on <u>January 15, 2014</u> at Rodger's apartment. This contact concerned a dispute Rodger was having with his housemates, Hong and Wang, over cooking odors. As part of the dispute, the housemates took and hid property (pots, pans, and scented candles) belonging to other housemates. The dispute led to Rodger making a citizen's arrest of Hong for petty theft and calling the SBSO.[1] During this contact, although Hong informed deputies that Rodger had taken Hong's rice bowls and moved Hong's property, SBSO deputies did not investigate Hong's allegations. SBSO deputies did not perform a background or gun registry check on Rodger and did not look at the internet to investigate Rodger. FAC, ¶ 37.

Three months later, in April, 2014, Rodger uploaded videos on YouTube, including a video he entitled "Why do girls hate me?"  His uploaded videos contained speech expressing Rodger's jealousy and rage toward women, minorities, and sexually active people. The videos revealed Rodger to be an unstable, vengeful, jealous and dangerous person. FAC, ¶ 39.

The third SBSO contact occurred on <u>April 30, 2014</u> at Rodger's apartment. On that date, SBSO deputies went to Rodger's apartment to conduct a "wellness check." This contact was initiated through a call from a mental health worker who had seen Rodger's videos and other online posts and believed Rodger was a danger to himself and others. FAC, ¶ 40. Prior to this contact, Rodger presented an "existing danger" to Hong, Wang, and their guests. FAC, ¶ 40.

//

---

[1] A private person who has arrested another for committing a crime must promptly deliver the person to a peace officer. <u>Cal. Penal Code § 847(a)</u>.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

During this contact, SBSO deputies interviewed Rodger at his apartment's doorstep. After Rodger explained that there was a "misunderstanding," SBSO deputies departed. While conducting the wellness check, SBSO deputies did not view Rodger's videos or other online posts; did not perform a background check of Rodger; did not perform a gun check; did not ask to enter his apartment; and did not ask to search his room.  FAC ¶ 40.

A little over three weeks later, on May 23, 2014, Rodger used knives and other weapons to kill Plaintiffs' sons, Hong, Wang and Chen, in the apartment Rodger shared with Hong and Wang.  FAC, ¶ 41. After killing Hong, Wang and Chen, Rodger e-mailed a "manifesto" to his parents and others. *Id.* In his "manifesto," Rodger wrote that the April 30, 2014 wellness check had impacted him by making him realize that he needed to be extra careful and not act to arouse suspicion. FAC, ¶ 40. Plaintiffs allege that conduct of defendants County of Santa Barbara, County of Santa Barbara Sheriff's Department (collectively "the County"), and the County's agents and employees in conducting the "wellness check" deprived Hong, Wang and Chen of their right to life as guaranteed by the due process clause of the Fourteenth Amendment. FAC, ¶¶ 43, 45.


## ARGUMENT

### I.    LEGAL STANDARD.

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The motion must be brought early enough in the case not to delay trial. *Id.*  "'Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
5.

*Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009)). Rule 12(c) has been deemed "functionally identical" to Rule 12(b)(6). *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The same standard of review applies to both Rule 12(b)(6) motions and Rule 12(c) motions. *Id.*

That standard, established in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), requires that a "complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Chavez,* 637 F.3d at 1054. A complaint must be more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). It must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. That is, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  The standard demands more than a sheer possibility that a defendant has acted unlawfully. *Iqbal,* 556 U.S. at 678.   Thus, a complaint pleading facts that are merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief. *Id.*

The plausibility analysis requires a two-pronged approach. *Iqbal,* 556 U.S. at 678-79.   First, a court must recognize the elements a plaintiff must plead to state a claim. *Id.* at 675. Then the court identifies which statements in the complaint are factual allegations and which are legal conclusions. For purposes of considering a Rule 12(b)(6) motion, all allegations of material fact must be accepted as true and all inferences must be construed in the light most favorable to the non-moving party. *Moyo v. Gomez,* 40 F.3d 982, 984 (9th Cir. 1994). The court need not accept as true legal conclusions that are made in the form of factual allegations. *Iqbal,* 556 U.S. at 678.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**
6.

Finally, drawing "on its judicial experience and common sense," the court must decide in the context of the specific case, whether the factual allegations, assuming they are true, allege a plausible claim. *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## II.     THIS MOTION IS TIMELY.

This motion is timely because the pleadings are closed and the motion is brought early enough not to delay trial. Fed. R. Civ. P. 12(c).

The pleadings are closed because all defendants have filed answers to the First Amended Complaint. *See* Answer of Defendant Asset Campus Housing, Inc. (Dkt. No. 40); Answer of Defendants County of Santa Barbara and Santa Barbara County Sheriff's Department (Dkt. No. 46); Answer of Defendant Hi Desert Mobile Home Park (erroneously sued as "Capri Apartments at Isla Vista") (Dkt. No. 54); *In re Villegas*, 132 B.R. 742, 744-45 (B.A.P. 9th Cir. 1991); *Norcal Gold, Inc. v. Laubly*, 543 F.Supp.2d 1132, 1135 (E.D. Cal. 2008).

This motion will not delay trial. Trial of this matter is set to begin on April 26, 2016. The last day for hearing motions in this matter is March 7, 2016. *See* Scheduling and Case Management Order, Dkt. No. 44. This motion is set for hearing well in advance of both the motion hearing cut-off and the trial date to ensure no delay of trial.

//
//
//
//
//
//

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

### III.   PLAINTIFFS' FIRST CAUSE OF ACTION ALLEGING VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS UNDER 42 U.S.C. § 1983 FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE   GRANTED.

Plaintiffs bring one claim against the County. That claim, labeled Plaintiffs' "first cause of action," alleges that the County violated Hong's, Wang's, and Chen's Fourteenth Amendment due process rights to life. Plaintiffs allege that the County committed these violations on April 30, 2014 when the County performed a wellness check on Elliot Rodger. Plaintiffs allege that during that wellness check, the County failed to reasonably investigate, failed to perform a background check, and failed to view Rodger's online postings. Plaintiffs bring their claims under 42 U.S.C. § 1983.

The County can only be liable under Section 1983 if there is an underlying constitutional tort. *Johnson v. City of Seattle,* 474 F.3d 634, 638-39 (9th Cir. 2007). Therefore, the first inquiry is whether Plaintiffs' sons were deprived of a right secured by the United States Constitution and laws. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).  As discussed below, Plaintiffs cannot establish an underlying constitutional tort against the County or its employees.

### A.   Plaintiffs Fail to Allege a Violation of Due Process under the Fourteenth Amendment to the United States Constitution.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law." *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 194,109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  The Supreme Court has interpreted the language of the Due Process Clause as a limitation on the State's power to act, and not as a guarantee of certain minimal levels of safety and

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

security. *Id.* at 195; *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 768-69, 125 S.Ct. 2796, 162 L.Ed. 2d 658 (2005). The Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney,* 489 U.S. at 194. That is, the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.

Applying this interpretation of the Due Process Clause, the Supreme Court has determined that, generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. Because Plaintiffs' allegations do not indicate that Elliot Rodger was anything other than a private actor when he murdered Hong, Wang, and Chen, this general rule would preclude liability against the County.

Two exceptions to this general rule have been determined to apply in limited circumstances.  These are: (1) the "special-relationship" exception; and (2) the "state-created danger" exception. *Patel v. Kent School District*, 648 F.3d 965, 971-72 (9th Cir. 2011). As discussed below, Plaintiffs fail to state a claim for relief under either of these exceptions.

       1.   The Special-Relationship Exception Does Not Apply Because the County Did Not Impose Any Limitation on Plaintiffs' Sons' Freedom to Act on Their Own Behalf.

The special-relationship exception may apply when the State affirmatively acts to restrain an individual's freedom to act on his own behalf. *DeShaney*, 489 U.S. at 200. Examples of such restraint include incarceration and institutionalization. *Id.* Plaintiffs allege no facts suggesting that the County acted to restrain Hong's, Wang's, or Chen's liberty, and therefore Plaintiffs fail to

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

state a claim under this exception. *See Patel*, 648 F.3d at 972 ("The special-relationship exception does not apply when a state fails to protect a person who is not in custody.").

    2.   The State-Created Danger Exception Does Not Apply Because the County Neither Acted Affirmatively to Place Plaintiffs' Sons in Danger Nor Acted with Deliberate Indifference to a Known or Obvious Danger.

The state-created danger exception may apply when a plaintiff shows that "'state action creates or exposes an individual to a danger which he or she would not have otherwise faced.'" *Johnson*, 474 F.3d at 639 (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)). To allege a claim under this exception, the Ninth Circuit has recognized two clear requirements. The first requirement demands <u>affirmative conduct</u> by a state actor in placing a particular plaintiff in danger. The second requirement limits the exception's application to instances where the state acts with <u>deliberate indifference</u> to a <u>known or obvious danger</u>. *Patel*, 648 F.3d at 971-72.

    a.   Plaintiffs Allege No Affirmative Action by the County Placing Hong, Wang, or Chen in Danger.

Under the danger creation exception, Plaintiffs must show that the County's action affirmatively placed Hong, Wang and Chen in a position of danger. *Kennedy*, 439 F.3d at 1061. In other words, County action must have created or exposed Hong, Wang and Chen to a danger which they would not have otherwise faced. *Id.*; *DeShaney*, 489 U.S. at 201; *Johnson*, 474 F.3d at 639.

The limited applicability of this exception was made clear by the Supreme Court in *DeShaney*. In that case, a severely brain-damaged boy, Joshua, and his mother sued the Winnebago County Department of Social Services ("DSS") after Joshua's father beat Joshua, causing severe brain damage. Joshua and his

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
10.

mother alleged that DSS violated Joshua's substantive due process rights by failing to intervene to protect him against the risk that his father would beat him. *DeShaney*, 489 U.S. at 193.

The facts in *DeShaney* showed that DSS's contact with Joshua began in January 1982. At that time, DSS received a report that Joshua might be a victim of child abuse committed by his custodial father. A second report was received a year later, at which time DSS obtained a court order placing Joshua in the temporary custody of the hospital where he was being treated for injuries. A DSS team found insufficient evidence to retain Joshua in the court's custody. As a result, Joshua was returned to his father's custody. Over the next fourteen months, DSS received additional reports of abuse by the father, visited the home, and observed suspicious injuries on Joshua's head, but took no action. In March 1984, the father beat Joshua so severely that he caused permanent brain damage. *DeShaney*, 489 U.S. at 192-93.

The Supreme Court recognized the "undeniably tragic" facts of the case (*DeShaney*, 489 U.S. at 191) but firmly held that the State had no constitutional duty to protect Joshua. The Court reasoned as follows:

> While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all . . . .

*DeShaney*, 489 U.S. at 201.

//

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

1   The Ninth Circuit, informed by the Supreme Court's decision in

2   *DeShaney*, has considered the state-created danger exception in a number of

3   cases. In several cases readily distinguished from this case, the Ninth Circuit

4   found allegations sufficient to proceed to trial under the state-created danger

5   theory. These include the following: *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.

6   1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *L.W.*

7   *v. Grubbs,* 974 F.2d 119 (9th Cir. 1992), *cert. denied,* 508 U.S. 951, 113 S.Ct.

8   2442, 124 L.Ed.2d 660 (1993); *Penilla v. City of Huntington Park,* 115 F.3d 707

9   (9th Cir. 1997); *Munger v. City of Glasgow Police Dep't,* 227 F.3d 1082 (9th Cir.

10   2000); and *Kennedy v. City of Ridgefield,* 439 F.3d 1055 (9th Cir. 2006).

11   A brief review of the facts of these cases provides guidance in

12   distinguishing the important factor of <u>affirmative action</u> from inaction under the

13   state-created danger theory. The Ninth Circuit first applied the state-created

14   danger exception in *Wood*. In that case, the plaintiff had been raped after

15   accepting a ride from a stranger. The Ninth Circuit determined that where a state

16   trooper pulled a vehicle over, arrested the driver, impounded the vehicle,

17   required the female passenger to get out of the car, and then drove away, leaving

18   the woman stranded in a high crime area, without adequate clothing to protect

19   against fifty degree air temperature, the plaintiff had raised a triable issue of fact

20   on the question of whether the trooper's conduct affirmatively placed her in a

21   dangerous situation. *Wood,* 879 F.2d at 590. This is because the state trooper

22   had direct involvement with a particular individual that created the risk of harm

23   to her. *Id.*

24   The next danger-creation case considered by the Ninth Circuit was

25   *Grubbs*. In *Grubbs,* the plaintiff was a nurse at a state custodial institution.

26   Unbeknownst to her, the state assigned a violent sex offender inmate, known to

27   the facility to be likely to commit a violent crime if left alone with a female, to

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

28

work with her alone in a clinic. The inmate beat and raped her. *Grubbs,* 974 F.2d at 120. The Ninth Circuit determined that the allegations supported Section 1983 liability because, similar to the trooper in *Wood,* the state correctional officers used their authority to create an opportunity for the inmate to assault the plaintiff that would not otherwise have existed. Plus, the state officers enhanced the nurse's vulnerability to attack by leading her to believe that she would not be left alone with violent sex offenders. *Id.* at 121.

Affirmative action was again evident in *Penilla.* Juan Penilla ("Penilla"), was a very sick man. An emergency 911 call was made to get medical help for Penilla.  The defendant officers responded to the call and found Penilla to be in serious need of medical care. Even so, the officers cancelled a request for paramedics, moved Penilla into his house from his porch, locked the door and left. The next day Penilla was found by his family dead on the floor in his house. *Penilla,* 115 F.3d at 708.  In affirming denial of a motion to dismiss, the Ninth Circuit focused on the alleged affirmative actions taken by the officers, e.g., cancelling the paramedics; taking Penilla from public view on his porch into his empty house; and locking him inside alone, thus making it impossible for anyone else to provide Penilla with medical care. *Id.* at 710. This was affirmative conduct that put Penilla in danger, i.e., it was state <u>action</u>, as opposed to inaction, that created the danger and put Penilla at risk. *Id.*

In *Munger,* the Ninth Circuit reversed a grant of summary judgment. In that case, police were called to a bar in Montana on a bitter cold night. The establishment's bartender sought police assistance with a man who had been drinking heavily, became belligerent, and created a disturbance. Although the man was obviously drunk, officers ejected him from the bar into the freezing cold with inadequate clothing. The man's truck was outside the bar but officers told him not to drive. The man was not free to reenter he bar. He was seen

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

walking away and was found dead from hypothermia the next day two blocks from the bar. *Munger,* 227 F.3d 1082, 1084-85. The Ninth Circuit reviewed its *Wood, Grubbs* and *Penilla* decisions and concluded that accepting the facts alleged against the officers, it was indisputable that the officers placed the decedent in a more dangerous position than the one they found him in. *Munger,* 227 F.3d at 1087.

Finally, in *Kennedy* the Ninth Circuit found that an officer affirmatively created an actual, particularized danger the plaintiff would not otherwise have faced when he informed a suspect of the plaintiff's allegations of child molest. The officer did so without providing the plaintiff with a promised notice that the officer was about to notify the suspect of the allegation.  This notice was promised because the plaintiff was fearful of the suspect, who had violent tendencies, and was concerned for her safety. *Kennedy,* 439 F.3d at 1057-58. Shortly after informing the suspect of the child molest allegations, the suspect shot and killed plaintiff's husband and shot the plaintiff. *Id.* at 1058. The court found that "[l]ike plaintiff's supervisor in *Grubbs,* [the officer] created 'an opportunity for [the suspect] to assault [the plaintiff and her husband] that otherwise would not have existed.'" *Kennedy,* 439 F.3d at 1063 (quoting *Grubbs,* 974 F.2d at 121).

As demonstrated by these cases, the critical distinction for purposes of assessing whether a claim has been stated under the danger-creation exception is the stark line between state action and inaction in placing a person at risk. *See Penilla,* 115 F.3d at 710; *Kennedy,* 439 F.3d at 1063 n.4. When a claim is based on alleged law enforcement inaction, the danger-creation exception does not apply. This was the outcome in *Johnson v. City of Seattle,* 474 F.3d 634, 641 (9th Cir. 2007). In *Johnson,* the Ninth Circuit reviewed the cases summarized above and easily contrasted them from the case on review. The stark contrast was

1  evident based on the facts. Significantly, the plaintiffs in *Johnson* placed
2  themselves in Seattle's Pioneer Square District during the city's five-day Mardi
3  Gras celebration. Over the course of the celebration, and in the face of crowd
4  problems and violence, the police department modified its operational plan. As a
5  result of the plan change, police stayed out of the crowd and remained on the
6  periphery of Pioneer Square. Plaintiff celebration attendees were assaulted and
7  injured while in the crowd. *Johnson,* 474 F.3d at 636-37.

8     Under the facts alleged, the Ninth Circuit found that the change in
9  operational plan was not affirmative conduct that placed the plaintiffs in danger,
10 stating as follows:

11     [T]he fact that the police at one point had an operational plan
12     that might have more effectively controlled the crowds at
13     Pioneer Square does not mean that an alteration to this plan
14     was affirmative conduct that placed the Pioneer Square
15     Plaintiffs in danger. The police did not communicate anything
16     about their plans to the Pioneer Square Plaintiffs prior to the
17     incident.

18 *Johnson,* 474 F.3d at 641. The court reasoned that the participants had exposed
19 themselves to the dangers by participating, and the change in operational plans
20 during the multi-day celebration "did not place [the plaintiffs] in any worse
21 position than they would have been in had the police not come up with any
22 operational plan whatsoever." *Id.* The Ninth Circuit found the change of
23 operational plans in *Johnson* analogous to the DSS decision to return Joshua
24 from state custody to his father's custody in *DeShaney. Id.* Just as DSS placed
25 Joshua in no worse position than that in which he would have been had it not
26 acted at all, the police decision in *Johnson* " 'placed [the Pioneer Square
27 Plaintiffs] in no worse position than that in which [they] would have been had

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

28

[the Defendants] not acted at all.' " *Johnson*, 474 F.3d at 641 (quoting
*DeShaney*, 489 U.S. at 201).

Application of Ninth Circuit authority to this case supports a
determination that Plaintiffs have failed to allege liability against the County
under the state-created danger theory. Unlike the plaintiffs in *Wood, Grubbs,
Penilla, Munger,* and *Kennedy,* who, prior to affirmative action by law
enforcement officers, were not exposed to the danger that caused their harm,
Hong, Wang, and Chen were already exposed to existing danger from Rodger's
plans of violence prior to April 30, 2014. During the seven months prior to the
date of the wellness check, Hong and Wang shared an apartment with Rodger.
Before they ever moved in with him, and during every day that they lived with
him, Rodger had a plan to murder young people in Isla Vista; was serious about
executing that plan; and already owned two handguns. Thus, before the
County's deputies arrived at Rodger's apartment on April 30, 2014, the entire
community of Isla Vista, including Hong, Wang and Chen, was exposed to
Rodger's existing evil plans. When the County's deputies departed Rodger's
apartment on April 30, 2014, Hong, Wang and Chen remained exposed to the
same dangers to which they were exposed prior to the SBSO deputies' arrival.
On the facts alleged, the County did not, through any affirmative action of its
deputies, create an opportunity for Rodger to murder his housemates and their
visiting friend that otherwise would not have existed. *See Kennedy,* 439 F.3d at
1063.

Significantly, Plaintiffs do not allege that County defendants took any
action on April 30, 2014 that placed Hong, Wang, or Chen in danger. *See
Penilla,* 115 F.3d at 710; *see also Lewis v. County of San Bernardino,* Case No.
EDCV-11-01594 VAP (OPx), 2011 WL 6288100, *6, *16-18 (Dec. 14, 2011);
*aff'd in Lewis v. County of San Bernardino,* 558 Fed.Appx. 735,737 (Feb. 24,

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

2014) (unpublished) (affirming district court's grant of motion to dismiss for failure to state a claim under the state-created danger exception and rejection of contention that County's release of arrestee placed him in a worse position because it communicated to others that arrestee was able to take care of himself). In fact, Plaintiffs' allegations are all allegations of <u>inaction</u>. See FAC, ¶¶ 40, 43.The First Amended Complaint is replete with allegations of what the County officers <u>failed to do</u> on April 30, 2014. FAC, ¶ 40.[2] Striking in its absence is any allegation of an affirmative act by County deputies during their April 30, 2014 contact with Rodger that placed Hong or Wang in a danger they did not already face as Rodger's housemate since September 2013, or that placed Chen in a danger he did not already face as a friend of Hong's and Wang's who visited at their apartment. The absence of any affirmative action dooms Plaintiffs' claims because the general rule is that the state is not liable for its omissions. *Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000)*.

Moreover, the County clearly did not directly place Hong, Wang and Chen in Rodger's apartment or in Isla Vista. In fact, Plaintiffs allege no direct contact between the County and Hong, Wang or Chen on or after April 30, 2014. The County is alleged to have had a single contact with Hong and Wang on January 15, 2014 when Rodger made a citizen's arrest of Hong. FAC, ¶ 37. The County is not alleged to have had any relationship whatsoever with Chen. The absence of any direct contact with Plaintiffs' sons on or after April 30, 2014 makes this case distinctly different from *Wood, Grubbs, Penilla, Munger,* and

---

[2] Regarding Plaintiffs' allegation that SBSO deputies did not perform a "gun check," it is noteworthy that on April 30, 2014, no such check was required under California law in connection with a welfare check. Effective January 1, 2015, such a search is now encouraged. *See* Cal. Penal Code § 11106.4.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**
17.

*Kennedy*, all cases where law enforcement officers had direct contact with the plaintiffs and whose actions placed the plaintiffs in danger. Another distinct difference between this case and *Grubbs* and *Kennedy*, is that Plaintiffs do not allege that the County made any assurances to Hong, Wang and Chen that left Hong, Wang and Chen more vulnerable to attack (*Grubbs,* 974 F.3d at 121); nor do they allege that County deputies made any promise to Hong, Wang or Chen and then failed to uphold that promise and thereby rendered Hong, Wang or Chen unable to protect themselves from attack. *Kennedy,* 439 F.3d 1063.

The facts alleged in this case follow those of *Johnson*. Just as the Pioneer Square Plaintiffs placed themselves at the Mardi Gras celebration, Hong, Wang and Chen placed themselves in Rodger's apartment. Just as the Seattle police did not communicate their plans to the Pioneer Square Plaintiffs, the County made no promises or assurances to Hong, Wang and Chen either before or after April 30, 2014.

Having alleged inadequate facts to state a claim, Plaintiffs attempt to transform non-action into action with the conclusory statement that "[t]hrough their conduct, the SBCSD affirmed that Rodger was not dangerous, increasing the existing danger to Hong and Wang and their guests and creating and catalyzing a danger to Hong and Wang which did not exist before." FAC, ¶ 42. This attempt fails. SBSO deputies' conduct in performing a wellness check and concluding the check without taking the subject into custody amounts to far less action that that of DSS in the *DeShaney* case. SBSO's visit with Rodger on April 30, 2014 cannot possibly equate to the affirmative conduct necessary to state a claim under the danger-creation exception under *DeShaney*. Furthermore, just as the police communicated nothing about their plans to the Pioneer Square Plaintiffs in *Johnson*, Plaintiffs have not alleged that the SBSO deputies communicated anything about their wellness check to Hong, Wang and Chen on

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**
18.

or after April 30, 2014. Plaintiffs have not alleged that Hong, Wang and Chen knew of the "wellness check," and, if so, drew an inference from Rodger's continued presence in the apartment that Rodger was not dangerous.  Even if Plaintiffs did allege this, it still would not allege an <u>affirmative act</u> by SBSO creating or enhancing the dangers Hong, Wang and Chen already faced.

Equally futile is Plaintiffs' effort to transform non-action into action with their conclusory statement that the SBSO deputies' omissions to act "emboldened Rodger and caused him to adapt and expand his plans of violence, creating greater danger than existed previously."  FAC, ¶ 40.  To begin, the Ninth Circuit has stated that the in determining whether a claim exists under the state-created danger exception, the critical distinction is not "an indeterminate line between danger creation and danger enhancement." *Penilla,* 115 F.3d at 710. Rather, the stark question is whether state action, as opposed to inaction, placed an individual at risk. *Id.* Rejection of the danger creation and enhancement distinction is evident in *DeShaney* and *Johnson.* Just as DSS's return of Joshua to his father's custody perhaps "emboldened" Joshua's father to beat Joshua even more, the act of returning Joshua to his violent father did not give rise to a constitutional duty to protect Joshua. *DeShaney,* 489 U.S. at 201. Similarly, just as the Seattle police department's operational decision to remain on Pioneer Square's perimeter perhaps "emboldened" troublemakers to assault members of the Mardi Gras crowd, the operational plan change did not give rise to a constitutional duty to protect the injured Mardi Gras attendees. *Johnson,* 474 F.3d at 641. And here, even if County deputies "emboldened"  Rodger to adapt and expand his plans, as Plaintiffs allege, the County's failures to investigate, watch videos, and perform a gun check did not give rise to a constitutional duty to protect Hong, Wang and Chen. *See Huffman,* 147 F.3d at 1061 ("The danger-creation exception to *DeShaney* does not create a broad rule

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**
19.

that makes state officials liable under the *Fourteenth Amendment* whenever they
increase the risk of some harm to members of the public.")

Finally, Plaintiffs' reliance on Rodger's words in his "manifesto" does not
plausibly allege any affirmative act by SBSO deputies creating a danger to Hong
and Wang and their guests that did not already exist. Plaintiffs quote Rodger
writing in his "manifesto" that as a result of the April 30, 2014 visit from SBSO
deputies, Rodger realized he needed to be more careful to avoid suspicion so
that he could carry out his existing plan "to massacre young people." FAC, ¶ 30.
That plan, as Plaintiffs allege, existed for years prior to April 2014. Any
increased caution by Rodger in the days before his rampage cannot plausibly be
said to have put Hong, Wang, and Chen in any increased danger.

Applying the Ninth Circuit's analogy approach, the County "placed
[Hong, Wang and Chen] in no worse position than that in which [they] would
have been had [the County] not acted at all." *Johnson, 474 F.3d at 641*. This is a
case where the critical distinction between action and inaction in placing a
person at risk is easily made. Plaintiffs fail to state a claim under the state-
created danger exception to the general rule of no liability for the acts of a
private person.

        b.    Plaintiffs Fail to Allege Deliberate Indifference.

"Deliberate indifference is 'a stringent standard of fault, requiring proof
that a municipal actor disregarded a known or obvious consequence of his
action.'" *Patel v. Kent School District, 648 F.3d 965, 974 (9th Cir. 2011)*
(quoting *Bryan County v Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 137
L.Ed.2d 626 (1997))*. The standard in the Ninth Circuit for deliberate
indifference requires a culpable mental state. *Id.* In describing this standard, the
Ninth Circuit explained that the state actor must know "'that something *is* going
to happen but ignores the risk and exposes [the plaintiff] to it.'" *Patel, 648 F.3d*

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

1  at 974 (quoting *L.W. v. Grubbs,* 92 F.3d 894, 900 (9th Cir. 1996)); *Huffman v.*

2  *County of Los Angeles,* 147 F.3d 1054, 1059 (9th Cir. 1998).[3]

3      As discussed above, Plaintiffs' claims against the County rely on their

4  assertion that County affirmative action exposed Hong, Wang, and Chen to a

5  danger they would not otherwise have faced. It is only through participation in

6  an affirmative act creating the danger that a state actor can either intend to

7  expose another to a risk or know that something is going to happen to a person

8  and then ignore that risk. *Patel,* 648 F.3d at 976; *Kennedy,* 439 F.3d at 1064 n.5

9  ("the state actor is liable for creating the foreseeable danger of injury given the

10  particular circumstances."). Because the County took no affirmative action

11  creating a foreseeable danger, Plaintiffs cannot successfully allege the

12  deliberative indifference necessary to the state-created danger exception.

13      Moreover, Plaintiffs First Amended Complaint does not allege that the

14  County's deputies knew that Rodger was going to go on a murderous rampage

15  and ignored that risk, thus intentionally exposing Hong, Wang and Chen to

16  being killed by Rodger. Plaintiffs allege that County deputies knew they were

17  performing a wellness check "based on a call from a mental health worker who

18  saw Rodger's YouTube videos and other online content and believed that

19  Rodger was a danger to himself and others." FAC, ¶ 40. Rodger's online content

20  and some of his YouTube videos had been posted over a year prior to the

21  wellness check. FAC, ¶ 32. Then in April 2014, Rodger uploaded more videos

22  to YouTube. These videos, similar to the April 2013 videos and posts, expressed

23  Rodger's jealousy and rage toward women, minorities and people who are

24  sexually active. FAC, ¶¶ 32, 39. Plaintiffs do not allege that Rodger's online

25  postings or YouTube videos stated that Rodger planned to kill Hong, Wang and

26

27      [3] The Ninth Circuit's "deliberate indifference" standard for purposes of the state-created danger exception does not require that "the conscience of the federal judiciary be shocked." *Kennedy,* 439 F.3d at 1064-65.

28

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

Chen, yet Plaintiffs make the conclusory statement that Rodger's YouTube videos "had revealed that [Rodger] was a specific and preventable threat to the other persons living in his apartment." FAC, ¶ 40.

If the Court considers this conclusory allegation, it follows that since SBSO deputies did not watch the videos, they could not have had knowledge that Rodger posed an immediate danger to, specifically, Hong and Wang. *See Patel*, 648 F.3d at 975-76. Furthermore, if the SBSO deputies on April 30, 2014 did not investigate Rodger's other online posts, did not perform a background check, did not perform a gun check, and did not search Rodger's room, Plaintiffs have not plead facts supporting a claim that SBSO deputies knew on April 30, 2014 that Rodger posed an immediate risk to Hong and Wang or Chen but ignored the risk.

Plaintiffs' allegations of what SBSO deputies did not do precludes a finding of deliberate indifference. Plaintiffs' theory is that if SBSO deputies had done certain things, they would have obtained information about Rodger and determined that Rodger was a danger to others. Thus, Plaintiffs plead that because of SBSO deputies' omissions, they were ignorant of any immediate danger posed by Rodger. It follows that if they were ignorant of Rodger's danger, they could not be deliberately indifferent to a known risk and then ignore that risk. In sum, Plaintiffs fail to allege facts rising to the high standard of deliberate indifference necessary to state a claim under the state-created danger exception.

**B.     Plaintiffs' Failure to Allege a Constitutional Violation Defeats The Effort to State a § 1983 *Monell* Claim against the County.**

The Supreme Court has held that counties can be sued directly under 42 U.S.C. § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
22.

adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978). The County may also be exposed to suit for constitutional deprivations caused by a government "custom," even when the custom has not been formally approved through official decision-making channels. *Id.*

Contrary to Plaintiffs' allegations (FAC, ¶ 9), the Supreme Court has made clear that a local government entity cannot be sued under § 1983 for an injury inflicted solely by its employees or agents, i.e., on a *respondeat superior* theory. *Id.* at 694.

As discussed in section III(A)(2) above, Plaintiffs have not alleged a Fourteenth Amendment substantive due process violation. They therefore have not alleged a claim for public entity liability under 42 U.S.C. § 1983. *Munger,* 227 F.3d at 1087; Johnson, 474 F.3d at 638-40.  Plaintiff's first cause of action should be dismissed.

## CONCLUSION

For the reasons set forth above, the County respectfully requests that this Court enter judgment as a matter of law for the County and dismiss Plaintiffs' first cause of action as set forth in the First Amended Complaint, thereby dismissing the County from this action.

Dated: September 25, 2015       MICHAEL C. GHIZZONI
                                COUNTY COUNSEL


                                By:  /S/ - Mary Pat Barry
                                   Mary Pat Barry
                                   Sr. Deputy County Counsel
                                Attorneys for Defendants
                                COUNTY OF SANTA BARBARA and
                                SANTA BARBARA COUNTY SHERIFF'S
                                DEPARTMENT

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

## DECLARATION OF SERVICE

I am a citizen of the United States and a resident of Santa Barbara County. I am over the age of eighteen years and not a party to the within entitled action; my business address is 105 East Anapamu Street, Suite 201, Santa Barbara, CA.

On September 25, 2015, I served a true copy of the within **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS COUNTY OF SANTA BARBARA AND SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT** on the interested parties in this action by:

☐  by mail.  I am familiar with the practice of the Office of Santa Barbara County Counsel for and processing of correspondence for mailing with the United States Postal Service.  In accordance with the ordinary course of business, the above mentioned documents would have been deposited with the United States Postal Service, after having been deposited and processed for postage with the County of Santa Barbara Central Mail Room.

☒  electronic transmission via CM/ECF to the persons indicated below:

### SEE ATTACHED SERVICE LIST

☒  (Federal)  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on September 25, 2015, at Santa Barbara, California.

/s/ - D'Ann Marvin
       D'Ann Marvin

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

# SERVICE LIST

*Chen, et al. v. County of Santa Barbara, et al.*

United States District Court Central District of California

Case No: 2:15-cv-01509-JFW(JEMx)

| | |
|---|---|
| Todd Becker<br>Inna S. Demin<br>BECKER LAW GROUP<br>3750 E. Anaheim St., Suite 100<br>Long Beach, CA  90804<br><br>demin@toddbeckerlaw.com<br>becker@toddbeckerlaw.com | Patrick McNicholas<br>David Angeloff<br>MCNICHOLAS & MCNICHOLAS, LLP<br>10866 Wilshire Blvd., Suite 1400<br>Los Angeles, CA  90024<br><br>pmc@mcnicholaslaw.com<br>da@mcnicholaslaw.com |
| Eugene J. Egan<br>Christopher A. Kanjo<br>MANNING & KASS, ELLROD, RAMIREZ, TRESTER, LLP<br>801 S. Figueroa St., 15th Floor<br>Los Angeles, CA 90017<br><br>eje@manningllp.com<br>cak@manningllp.com | William S. Kronenberg<br>KRONENBERG LAW, PC<br>1999 Harrison St. Suite 1450<br>Oakland, CA 94612<br><br>wkronenberg@krolaw.com |