Patrick McNicholas – State Bar No. 125868
David Angeloff – State Bar No. 272929
MCNICHOLAS & MCNICHOLAS, LLP
10866 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
Tel: (310) 474-1582
Fax: (310) 475-7871

Todd Becker – State Bar. No. 127567
Todd A. Fuson – State Bar. No. 152593
BECKER LAW GROUP
3750 E. Anaheim Street, Suite 100
Long Beach, CA, 90804
Tel: (562) 495-1500
Fax: (562) 494-8904

Attorneys for Plaintiffs,
JUNAN CHEN, KELLY YAO WANG, CHANGSHUANG WANG,
JINSHUANG LIU, LICHU CHEN, and WENQUEI HONG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNAN CHEN, KELLY YAO WANG, CHANGSHUANG WANG, JINSHUANG LIU, LICHU CHEN, and WENQUEI HONG,<br><br>        Plaintiffs,<br><br>        -vs.-<br><br>COUNTY OF SANTA BARBARA; SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT; CAPRI APARTMENTS AT ISLA VISTA; ASSET CAMPUS HOUSING; and DOES 1 through 200, Inclusive, | Case No.: 2:15-CV-01509-JFW (JEMx)<br>*[Hon. John F. Walter]*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS COUNTY OF SANTA BARBARA AND SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: October 26, 2015<br>Hearing Time: 1:30 p.m. |

|  |  |
|---|---|
| Defendants. | Ctrm: 16 |
|  | Complaint Filed: March 2, 2015<br>Trial Date: April 26, 2016 |

COME NOW PLAINTIFFS, JUNAN CHEN, KELLY YAO WANG,

CHANGSHUANG WANG, JINSHUANG LIU, LICHU CHEN, and WENQUEI

HONG (hereinafter, "Plaintiffs"), who hereby respectfully submit the below

Memorandum of Points and Authorities in Opposition to the Motion for Judgment

On The Pleadings brought by Defendants County of Santa Barbara and Santa

Barbara County Sheriff's Department (hereinafter, "Defendants" or "County").

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................. 1

II.  SUMMARY OF ALLEGATIONS ..................................................... 2

III. LEGAL STANDARD ........................................................................ 6

IV.  PLAINTIFFS HAVE PLEADED FACTS SUFFICIENT TO
     SUPPORT A CAUSE OF ACTION FOR VIOLATION OF
     FOURTEENTH AMENDMENT DUE PROCESS RIGHTS
     UNDER 42 U.S.C. § 1983 .............................................................. 9

     A.   The State Created Danger Exception Applies Because
          The County Deputies Committed Acts Which Increased The
          Danger To Decedents With Deliberate Indifference To The
          Consequences ......................................................................... 10

          1.   Plaintiffs Have Alleged Specific, Affirmative Action
               On Behalf Of The SBCSD Which Increased And
               Expanded A Danger To The Decedents ................................. 11

          2.   Plaintiffs Have Alleged That Defendants Increased
               A Known And Obvious Danger Posed By Rodger
               To The Decedents, Who Were Actually Known And,
               In Any Event, Foreseeable ......................................... 15

          3.   Plaintiffs Have Properly Pleaded And Alleged That
               Defendants Acted With Deliberate Indifference ................... 17

     B.   The Instant Case Can Be Readily Distinguished From
          Authority In The Ninth Circuit Which Identified
          Circumstances Where The State Created Danger Exception
          Did Not Apply ................................................................... 22

Plaintiffs' Opposition to Defendants' (County) Motion for Judgment on the Pleadings

C.   Because Plaintiffs Have Pleaded And Alleged Specific Facts Regarding Defendants Policies And Customs Plaintiffs Have Stated A Proper § 1983 *Monell* Claim Against The County ............................................................. 24

V.   CONCLUSION ............................................................. 25

Plaintiffs' Opposition to Defendants' (County) Motion for Judgment on the Pleadings

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................ 8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................ 8

*Bryan County v. Brown,*
   520 U.S. 397 (1997) ...................................................................... 11

*Cervantes v. City of San Diego,*
   5 F.3d 1273 (9th Cir. 1993) ............................................................. 8

*Christie v. Iopa,*
   176 F.2d 1231 (9th Cir. 1999) ....................................................... 17

*DeShaney v. Winnebago County Dep't of Social Services,*
   489 U.S. 189 (1988) ............................................................. 9, 10, 11

*Fajardo v. County of Los Angeles,*
   179 F.3d 698 (9th Cir. 1999) ..................................................... 6, 24

*Gilligan v. Jamco Dev't Corp.,*
   108 F.3d 246 (9th Cir. 1997) ........................................................... 8

*Gregory v. Daly,*
   243 F.3d 687 (2nd Cir. 2001) ........................................................... 7

*Gustafsen v. Tones,*
   117 F.3d 1015 (7th Cir. 1997) .......................................................... 6

*Ingraham v. Wright,*
   430 U.S. 651 (1977) ...................................................................... 10

*Johnson v. City of Seattle,*
   474 F.3d 634 (9th Circ. 2007) ......................................... 22, 23, 24

*Kennedy v. City of Ridgefield,*
     439 F.3[rd] 1055 (9th Cir. 2006) ...................................... 2, 11, 13, 14, 17, 18, 21

*Kruzits v. Okuma Machine Tool, Inc.,*
     40 F.2d 52 (3d Cir. 1994) ..................................................................... 6

*L.W. v. Grubbs,*
     92 F.3d 894 (9th Cir. 1996) ....................................................... 17, 18, 21, 22

*Long v. County of Los Angeles,*
     442 F.3d 1178 (9th Cir. 2006) ................................................................. 9

*Manarite v. City of Springfield,*
     957 F.2d 953 (1st Cir. 1992) .................................................................. 18

*McKissen v. Leyendecker,*
     2007 WL 2900425 ........................................................................... 14

*Monell v. Department of Social Services,*
     436 U.S. 658 (1978) ..................................................................... 24, 25

*Munger v. City of Glasgow Police Dep't,*
     227 F.3d 1082 (9th Cir. 2000) ................................................................ 15

*Patel v. Kent School District,*
     648 F.3d 965 (9th Cir. 2011) ....................................................... 18, 20, 21, 22

*Scheuer v. Rhodes,*
     416 U.S. 232 (1974) ....................................................................... 7

*Swierkiewicz v. Sorema N.A.,*
     534 U.S. 506 (2002) ...................................................................... 7, 8

*U.S. v. Any & All Radio Station Transmission Equip.,*
     207 F.3d 458 (8th Cir. 2000) ................................................................. 6

*U.S. Moriarty,*
     8 F.3d 329 (6th Cir. 1993) .................................................................. 6

*Walleri v. Federal Home Loan Bank of Seattle,*
        83 F.3d 1575 (9th Cir. 1996) ............................................................. 7

*West v. Atkins,*
        487 U.S. 42 (1988) ................................................................................ 9

*Wood v. Ostrander,*
        879 F.2d 583 (9th Cir. 1989) .......................................... 1, 2, 10, 11

## <u>FEDERAL STATUTES</u>

Federal Rules
        <u>42 U.S.C. § 1983</u> .......................................................................

Plaintiffs' Opposition to Defendants' (County) Motion for Judgment on the Pleadings

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Though the County Defendants cry "Poor David, Poor James, Poor George" and cast Plaintiffs' claims as an appeal to sympathy, they are far from it – the claims of the Plaintiffs are well founded in the law. The events that led to this case are indeed tragic, but that the events are tragic should not distract from the facts as pleaded and the constitutional violations alleged. Plaintiffs do not ask the Court to "bend to emotion," but ask the Court to apply the law and recognize that the affirmative actions and choices made by the Santa Barbara County Sheriff's Department ("SBCSD") were made with deliberate indifference and increased, enhanced, and exacerbated an existing danger to the decedents.

Elliot Rodger ("Rodger") was a killer who was deeply and profoundly troubled. That is not in dispute. Plaintiffs seek not to put the County in his shoes to bear responsibility in his place for the mere sake of laying blame. Plaintiffs seek, instead, to hold the Defendants accountable for their actions which violated the constitutional rights of the decedents, their sons. When the Sheriffs received the call to conduct the welfare check, in the performance of their duties, and in answering the call and stepping into action those deputies had a duty to conduct themselves without deliberate indifference to danger. As discussed in detail below, just like the officers in *Wood v. Ostrander* who saw a drunk driver and decided to act, and just like the

officers in *Kennedy v. City of Ridgefield* who received a complaint of molestation and decided to act, the deputies who knocked on Elliot Rodger's door made a decision to act and did so with deliberate indifference to a danger which was known and obvious based on the information they had at the time. Plaintiffs seek only to hold the County accountable for its actions and its wrongs under the law.

Defendant's narrow interpretation of the state-created danger doctrine is precisely the type of view rejected by the Ninth Circuit in *Wood v. Ostrander*, 879 F.2d 583, 592 (9th Cir. 1989). Since then, the Ninth Circuit has repeatedly held that state action that creates or exposes an individual to a danger that he or she would not have otherwise faced may violate that person's Fourteenth Amendment liberty interest in their own bodily security under 42 U.S.C. § 1983. Accordingly, if there is any conceivable set of facts to support the claim that Defendants violated the state-created danger doctrine, Defendants' Motion for Judgment on the Pleadings must be denied. *Kennedy v. Ridgefield*, 439 F.3d 1055 (9th Cir. 2006).

## II.   SUMMARY OF ALLEGATIONS

On June 4, 2011, Elliot Rodger moved to Isla Vista to attend Santa Barbara City College and moved into the Capri apartment complex on Seville Road. [¶21].[1] During or about December of 2012, Rodger purchased a Glock 34 semiautomatic pistol from Goleta Gun & Supply, signing all the paperwork in his own name. [¶31].

---

[1] All subsequent bracketed references will be to Plaintiffs' first amended complaint filed on May 20, 2015 (Docket No. 35) unless otherwise noted.

During or about Spring of 2013, Rodger purchased a Sig Sauer P226 pistol and several boxes of ammunition. [¶33].

On July 20, 2013, Rodger went to a party in Isla Vista in an intoxicated state. [¶34]. He became angry at a group of girls whom he believed were ignoring him, and tried to push some of them off a ledge. [¶34]. A group of male students intervened and pushed Rodger off the ledge, breaking his ankle. [¶34]. On or about July 21, 2013, Rodger called his father and told him he had been injured. Rodger's father drove up from Los Angeles to take him to the hospital. [¶35]. At the hospital, two Santa Barbara County Sheriff's Department ("SBCSD") deputies interviewed Rodger, who made up a story that he had been pushed off the ledge by bullies. [¶35]. The officers interviewed other persons who said Rodger was the only aggressor and had targeted women. [¶35]. The police did no further follow up and the matter was dropped. [¶35].

In September of 2013, after surgery on his ankle and following a period of recuperation at his mother's house, Rodger returned to Apt. 7. [¶36]. During this time, Capri assigned Cheun-Yuan "James" Hong ("Hong") and Weihan "David" Wang ("Wang") to be Rodger's roommates in Apt. #7. [¶36].

On January 15, 2014, Rodger placed Hong under citizen's arrest related to a dispute over pots and candles and called the SBCSD. [¶37]. After the deputies arrived at Apt. #7 and interviewed all parties, they arrested Hong for an infraction

3

(petty theft). [¶37] This charge against Hong was ultimately dismissed due to insufficient evidence. [¶37]. At that time, the SBCSD did not conduct any investigation into Rodger based on Hong's statements, did not do a background check on Rodger, did not do a gun check on Rodger, and did not look online to investigate Rodger. [¶37]. Due to this event, the SBCSD had actual knowledge that Rodger had roommates with whom he had a history of conflict.

During or about early 2014, Rodger started making specific plans to carry out the "Day of Retribution." He set April 26, 2014 as the date. He would later re-set the date to May 23, 2014. [¶38].

In April of 2014, Rodger uploaded numerous videos to YouTube which again expressed his jealousy and rage toward women, minorities, and people who are sexually active. These videos, including one titled "Why do girls hate me?", revealed Rodger to be an unstable, vengeful, jealous, and dangerous individual. [¶39].

On April 30, 2014, SBCSD visited Rodger for a "wellness check" in response to a call by a mental health worker who reported she had seen Rodger's online content and other online content and believed that Rodger was a danger to himself and others. [¶40]. No one from the SBCSD watched any part of any of the videos, reviewed any of Rodger's other online postings, performed any background check, or performed any gun check before or after speaking to Rodger. [¶40]. The deputies spoke to Rodger at the doorstep of the apartment but did not ask to enter the

4

apartment or search his room. [¶40]. They left after Rodger told them that it was a misunderstanding. [¶40].

The actions taken by the SBCSD in conducting the welfare check emboldened Rodger and caused him to adapt and expand his plans of violence, creating greater danger than existed previously. [¶40]. As Rodger put it in his manifesto, following the wellness check "If they had demanded to search my room… That would have ended everything. For a few horrible seconds I thought it was all over. When they left, the biggest wave of relief swept over me… This incident made me realize that I needed to be extra careful. I can't let anyone become suspicious of me…" [¶40].

On May 23, 2014, Rodger killed Hong and Wang, and their visiting friend Chen, with knives and other weapons inside Apt. #7. [¶41]. Rodger then headed out into Isla Vista to carry out a shooting rampage that left three more people dead and fourteen wounded. [¶41].

Finally, the acts and conduct of Defendants, as described above, were committed under color of state law, pursuant to official written and unwritten policy and custom of Defendants County and SBCSD. Said policy and custom included knowingly failing to adequately investigate individuals subject to a "wellness check," failing to adequately train employees on investigative technique, failing to adequately supervise employees, and failing to warn potential victims about the dangerous propensities of individuals under investigation. Defendants County and

SBCSD knew or should have known that serious injury would result from this custom and policy. [¶44].

## III.   LEGAL STANDARD

A Rule 12(c) motion can be made anytime after pleadings are closed and is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. Thus, courts consider all allegations of the non-moving party contained in the complaint as true and view all facts and inferences in the light most favorable to the pleader. *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999) and Fed. R. Civ. P. 12(c). Rule 12(c) of the Federal Rules of Civil Procedure provides: After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of a provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Judgment on the pleadings cannot be properly granted if the moving party has failed to clearly establish that no material issue of fact exists. *U.S. v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). See also *Gustafsen v. Tones*, 117 F.3d 1015 (7th Cir. 1997); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994); and *U.S. v. Moriarty*, 8 F.3d 329, 332 (6th Cir.

1  1993).

2      The level of specificity necessary to state a claim for Rule 12(b)(6) purposes is

3

4  governed by Rule 8(a)'s notice pleading principles that call for no more than a short

5  and plain statement of the plaintiff's claim. Although bald assertions and conclusions

6  of law are not adequate, it is enough to assert facts from which, construing a

7

8  complaint liberally and in the plaintiff's favor, one could infer occurrence of an

9  alleged violation. See *Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575,

10

11  1580 (9th Cir. 1996) ([I]n general, a complaint is construed favorably to the pleader,

12  quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) and *Gregory v. Daly*, 243

13  F.3d 687 (2nd Cir. 2001).

14      Accordingly, Rule 12(c) and Rule 12(b)(6) must be read in conjunction with

15

16  Rule 8(a), which establishes requirements for adequately pleading claims in federal

17  court. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-513 (2002). Rule 8 of the

18  Federal Rules of Civil Procedure provides, in pertinent part, that:

19

20          Claims for Relief. A pleading which sets forth a claim for relief,
          whether an original claim, counterclaim, cross-claim, or third-party
21          claim, shall contain (1) a short and plain statement of the grounds
          upon which the court's jurisdiction depends, unless the court already
22          has jurisdiction and the claim needs no new grounds of jurisdiction to
          support it, (2) a short and plain statement of the claim showing that
23          the pleader is entitled to relief, and (3) a demand for judgment for the
          relief the pleader seeks. Relief in the alternative or of several
24          different types may be demanded. Rule 8(a)(2) of the Federal Rules
25          of Civil Procedure imposes a lenient obligation upon pleaders in
          federal court. A Plaintiff is only required to satisfy the notice
26          pleading obligations by providing their opponent with fair notice of
27

28

their claim and the grounds upon which that claim rests. See *Swierkiewicz*, 534 U.S. at 512-513. In its liberality, Rule 8's notice pleading standard thus erects a powerful presumption against dismissing pleadings as deficient. West's Federal Rules Handbook, p. 243 (10th ed. 2003)(citing *see Gilligan v. Jamco Dev't Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)).

Thus, the Defendant's burden under this motion is to show that Plaintiffs' Complaint does not state a plausible claim for relief on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

It is important to note, [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274-75 (9th Cir. 1993).

///

///

///

## IV.   PLAINTIFFS HAVE PLEADED FACTS SUFFICIENT TO SUPPORT A CAUSE OF ACTION FOR VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the " 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (quoting *West v. Atkins*, 487 U.S. 42, 45 (1988)). To state a claim under section 1983, Plaintiffs need only allege two elements: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Id.* at 1186.

Federal Courts have defined how far the protections of 42 U.S.C. § 1983 extend to allow for liability when non-state actors (or other third parties) commit harm. *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 213 (1989) and its progeny set forth the factual circumstances under which governments and government actors incur such liability. Simply put, a government must provide protection in two instances: a government has a duty to protect a person if he or she is physically in government custody OR if the government is responsible for creating or enhancing a particular danger. *DeShaney* supra, 489 U.S. 189 at 197, 201. The principles of *DeShaney* have evolved in the over a quarter-century since the decision

and exceptions have been created, particularly in the Ninth Circuit. There are two well-defined exceptions to the rule of law announced in *DeShaney*. The first is known as the "special relationship" doctrine and allows liability when a custodial relationship exists between the plaintiff and the state. Plaintiffs are not alleging, for the purposes of their federal claims, that a special relationship existed herein. Plaintiff relies on the second exception to *DeShaney*, known as the "state created danger" doctrine.

### A.   The State Created Danger Exception Applies Because The County Deputies Committed Acts Which Increased The Danger To Decedents With Deliberate Indifference To The Consequences

It is now well established that the Constitution does protect a citizen's liberty interest in his or her own bodily security. See, e.g., *Ingraham v. Wright*, (1977) 430 U.S. 651, 673–74; *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir.1989). It is now also well established that, although the state's failure to protect an individual against private violence does not generally violate the guarantee of due process, it can where the state action "affirmatively place[s] the plaintiff in a position of danger," that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced. *DeShaney*, supra, 489 U.S. 189 at 197, 201; *Wood*, 879 F.2d at 589–901. This is known as the "state created danger" doctrine.

///

Under the "state created danger" doctrine Plaintiffs must show: (1) that the actions "created or increased the danger facing" the decedents; and (2) that the defendant's agents acted with deliberate indifference to a known or obvious danger. *Kennedy v. Ridgefield*, 439 F.3d 1055 (9th Cir. 2005). The Supreme Court, in *DeShaney*, outlined this exception when it stated: "while the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, supra, 489 U.S. 189 at 201. Thus, if the officer's actions augmented, enhanced or exacerbated the danger facing the decedents, Plaintiffs may prevail on this issue.

The second prong of the state created danger doctrine, requires that the plaintiff demonstrate that the state official acted with deliberate indifference to a known or obvious danger. This requires proof that a municipal actor disregarded a known or obvious consequence of his actions. *Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

1.    **Plaintiffs Have Alleged Specific, Affirmative Action On Behalf Of The SBCSD Which Increased And Expanded A Danger To The Decedents**

The state-created danger doctrine was first recognized by the Ninth Circuit in *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989). In *Wood*, a Washington State

trooper arrested a driver and impounded his vehicle after determining that he was intoxicated, leaving the driver's female passenger stranded late at night in a high crime area. *Id.* at 586-87. The woman subsequently accepted a ride with an unknown man, who took her to a secluded area and raped her. *Id.* Although it was undisputed that the assailant was a private actor, the court refused to dismiss the victim's 42 U.S.C. § 1983 claims against the trooper because there was a question of fact as to whether the trooper had affirmatively created the particular danger and exposed the woman to the violent acts of the assailant:

The "affirmative act" in *Wood* was the basic performance of the officer's duties. Consider the parallels between *Wood* and the instant case with respect to what it means to affirmatively act. In the *Wood* case, the police were engaged in the activity of doing their jobs. They observed a drunk driver and took action (arresting the driver and impounding his car). Then, although the potential danger to passenger was obvious, the police <u>failed</u> to call her a cab, give her a ride, or escort her to the bus, etc.

In the instant case, the Santa Barbara sheriffs were similarly engaged in the activity of doing their jobs. They received a call from a mental health worker that identified someone who was believed to be a danger to themselves and others and they took action based on that call (performing the welfare check). Although the potential danger to the known co-residents was obvious based on the call, the

deputies failed to watch any part of any of the videos which had prompted the call, failed to review any of Rodger's other online postings, failed to perform any background check, and failed to perform any gun check before or after speaking to Rodger. In both cases, an action was first undertaken, and then the indifference of the officers in performing their duties exposed known parties to obvious risk of harm (in both cases with tragic results). In both cases, the harm took the same form: The officers in both sets of facts wanted to be done and move on with their work, neither wanting to take the time to protect those who were made more vulnerable by their conduct (the rape victim and the decedents). This is why Defendant's characterization that Plaintiff's claims are based on an "omission" fail: the claims are based on an <u>act</u>.

Under the rubric of the state created danger doctrine, the "affirmative act" of the government actor can be within the normal actions of the everyday performance of the actor's duties. *Id.* at 587. Such everyday acts, like the performance of a welfare check, when taken with deliberate indifference to a known or obvious danger, are appropriate to form the basis of a state created danger.

The Ninth Circuit revisited the state created danger doctrine in *Kennedy v. Ridgefield*, 439 F.3d 1055 (9th Cir. 2005). In *Kennedy,* a 13-year old (Burns) molested his young female neighbor. Burns had a history of violent behavior: he regularly tormented his family and he once lit a cat on fire. Plaintiff Kennedy

reported the crime to the police. Then, for an unknown reason, the responding police officer told Burns about the allegations and who had made them. Enraged, Burns broke into Mrs. Kennedy's house, shot and killed her husband, and wounded her. Mrs. Kennedy sued under Section 1983. The issue was whether the officer was liable because, in informing Burns of the allegations, he had created or increased the danger the Kennedys faced. *Id.* at 1057.

Consider again the instant case, where the "affirmative" government act is virtually the same as the one in *Kennedy*: communicating information to a troubled and dangerous person in the course of performing law enforcement duties and investigating an issue. The duty flowed to the known and obvious potential victims of the troubled person. Santa Barbara deputies, in engaging with Rodger, informed him that there were persons monitoring his online activities and giving information about him to the police. Rodger was essentially informed that someone was observing him and wanted to stop him from hurting himself or others.

The act committed by the Santa Barbara deputies was not abstract. This is not a case which alleges that the Sheriff's Department failed in some abstract way to investigate and thwart a mysterious threat. In each Ninth Circuit case finding a state created danger existed, the state actor's direct contact with the victim affirmatively created the danger. *McKissen v. Leyendecker* 2007 WL 2900425. The Defendants' direct contact and communications with Rodger, an affirmative act, increased and

changed the danger faced by the decedents.

**2.** **Plaintiffs Have Alleged That Defendants Increased A Known And Obvious Danger Posed By Rodger To The Decedents, Who Were Actually Known And, In Any Event, Foreseeable**

In *Munger v. City of Glasgow* the Ninth Circuit reversed a grant of summary judgment finding that two Montana officers had "placed the decedent in a more dangerous position that the one they found him in" when they ejected a drunk man out of a bar wearing only a t-shirt and jeans in extremely cold weather. *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000). The *Munger* court analyzed what it means to "place someone in danger" and held "In examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the officers left the person in a situation that was more dangerous than the one in which they found him." *Id.* at 1086.

The deputies who performed the welfare check knew that "a mental health worker who reported she had seen Rodger's YouTube videos and other online content and believed that Rodger was a danger to himself and others." [¶40] At the time of the check, the Sheriff's Department had actual knowledge that Rodger had roommates with whom he had conflict based on the "candle incident" in which a

deputy had interviewed all the roommates and arrested James Hong following a dispute. [¶37]. Even if they hadn't had such knowledge, due to the nature of the apartment complex, the individual apartment, and the community in which the welfare check took place, it was known or obvious to the deputies that Rodger was sharing his apartment with roommates.

At the time the deputies took that call, the "others" that were obviously most vulnerable to any potential violence he could inflict would be those who resided behind a locked door with the dangerous individual: his roommates. When the deputies performed the welfare check, those roommates were out of the apartment, in a position of safety, presumably on campus attending classes. The officers communicated to Rodger that there were persons monitoring his online activities and giving information about him to the police. That communication had the direct result of causing Rodger to modify his plans and change his behaviors, making him more likely to succeed in his plans and therefore more dangerous. Plaintiffs pleaded the existence of direct evidence of this expansion of the danger in their First Amended Complaint from Rodger's own manifesto. He references the welfare check, saying "This incident made me realize that I needed to be extra careful. I can't let anyone become suspicious of me." [¶40]. Rodger goes on to detail other significant changes to his plans and behaviours in his manifesto as well, such as taking down his YouTube videos to not arouse suspicion and beginning to keep a loaded handgun

near him at all times.

It is undisputed that Rodger already had plans to commit violence before the welfare check. The danger was not "created" by the deputies, it was "increased." Although the danger already existed, clearly the decedents were "in a situation that was more dangerous than the one in which they found [them]" after the welfare check. Rodger changed his activities and made them covert and began keeping a loaded weapon near him at all times. For the individuals who shared living space with Rodger, this represented a shift beyond the any danger they had previously faced.

**3.     Plaintiffs Have Properly Pleaded And Alleged That Defendants Acted With Deliberate Indifference**

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Kennedy,* supra, 439 F.3d 1055 at 1064 (quoting *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir.1999)). The standard turns on what the actor knew or expected was going to happen. As set forth in *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) "The gross negligence instruction here does not incorporate this notion of impending harm, i.e. the defendant knows that something is going to happen but ignores the risk and exposes someone to it." The use of the term "someone" is informative, the risk of harm need not be particularized to a specific individual or individuals. *Id.* at 900.

Defendants assert that the "deliberate indifference" standard requires that the state actors must have been aware of a threat or danger that flowed specifically to known individuals (the decedents). Not so. Neither *Patel* nor *Kennedy* hold that knowledge of the individual plaintiff is required, instead requiring that the state actor ignored the risk itself, i.e. "a known or obvious consequence of his actions." *Kennedy,* supra, 439 F.3d 1055 at 1064; *Patel v. Kent School District*, 648 F.3d 965, 974 (9th Cir. 2011).

Finally, quoting *Manarite v. City of Springfield*, 957 F.2d 953 (1st Cir. 1992), cert. denied, the *Grubbs* court was informed by the the exact factors a plaintiff must meet to show deliberate indifference set forth by the *Manarite* court: "[W]hen liability for serious harm or death, including suicide, is at issue, a plaintiff must demonstrate "deliberate indifference" by showing (1) an unusually serious risk of harm, (self-inflicted harm in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk." *Grubbs*, supra, 92 F.3d 894 at 900.

The facts in the instant case, as pleaded, support a question of fact that the Defendants acted with deliberate indifference. To take the factors one at a time: (1) The deputies were aware of an unusually serious risk of harm as they were expressly told by a mental health worker that Rodger posed life threatening danger to himself

and others. [¶40]. Because the report came from a mental health professional, it should have been given added weight and credibility. The report clearly conveyed that there was a risk that Roger would commit an act of serious violence or life threatening violence (suicide by its definition is life threatening). That risk naturally extended to the occupants of Rodger's apartment, who were actually known to the Sheriff's Department because of the prior conflict reported by Roger  (the "candle incident"). [¶37]. (2) Defendants had actual knowledge of the "elevated risk" discussed above. The deputies received the call, and as pleaded there was no gap in information between what the mental health worker communicated and what the deputies actually knew. The Sheriff's Department had actual knowledge not only that Rodger <u>had</u> roommates, but that there was a <u>history of conflict</u> between Rodger and his roommates.[2] It was obvious and foreseeable that Rodger's roommates who would be in a position of vulnerability to the threat he posed when they returned home. Finally, (3) as pleaded, in taking the action they took and conducting the check, Defendants failed to take the basic and necessary "obvious steps" to address the known risk that Rodger posed. The deputies neither demanded nor asked to come inside the apartment. No one from the SBCSD watched any part of any of the videos, reviewed any of Rodger's other online postings, performed any background check, or performed any gun check before or after speaking to Rodger. [¶40]. Further, no

---

[2] It is unknown at this time, but Plaintiffs believe that at least one of the deputies present during the "candle incident" was also actually present during the welfare check. If necessary, Plaintiffs can

action was taken by the SBCSD to prevent the decedents from returning to their apartment or to warn them that they faced a known danger if they returned.

Defendants' moving papers rely heavily on their assertion that "Because the County took no affirmative action creating a foreseeable danger, Plaintiffs cannot successfully allege the deliberative indifference necessary to the state-created danger exception." (Defendants' County of Santa Barbara and Santa Barbara Sheriff's Dept.'s Memorandum of Points and Authorities In Support of Motion For Judgement On The Pleadings, P. 21 L. 10-12). Defendants characterize Plaintiffs' pleadings as based on an "omission" as opposed to an "act." Defendants cannot sidestep the fact that Plaintiff has pleaded that the deputies took specific affirmative action (the welfare check), in the face of a known and serious danger (danger warnings from a mental health worker), and were deliberately indifferent to the consequences of performing a cursory and inadequate welfare check (knowing Rodger posed a danger and had roommates with whom he had a history of conflict).

Defendants also rely heavily on *Patel v. Kent School District*, 648 F.3d 965 (9th Cir. 2011) to argue that the "deliberate indifference" standard is insurmountable for Plaintiffs. In *Patel,* the parents of a mentally disabled young female student, A.H., sued her school when they discovered that male students had been having sex with A.H. in school bathrooms. Although the school had been on notice that A.H.

_____

amend their First Amended Complaint to include such an allegation if necessary.

was vulnerable, even having a provision in her education plan calling for constant

supervision, she was allowed to go to the bathroom alone where the rapes occurred.

*Id.* at 976. Critically, the teacher who allowed A.H. to use the bathroom

unsupervised did so with <u>good intentions</u> for the plaintiff. "Further, well before this

litigation began, Wilhelm (the teacher) gave her colleagues a compelling reason for

allowing A.H. to use the bathroom by herself: it was a "step toward [A.H.'s] full

transition" to graduating from high school." *Id* at 976. The teacher, although she

committed a serious lapse of judgment, never "intended to expose A.H. to a known

risk." *Id.* at 976.

The teacher in *Patel* allowed the victim to go to the bathroom alone because

she thought it would <u>help</u> the student develop. There is no reasonable argument that

the deputies consciously performed the welfare check in the way they did in order to

"help" the decedents in any way.

Finally, it must be noted that the Ninth Circuit's "deliberate indifference"

standard for purposes of the state-created danger exception does not require that "the

conscience of the federal judiciary be shocked." *Kennedy*, 439 F.3d at 1064-65.

At the Court set forth in its conclusion in *Grubbs*: "We have not added a requirement

that the conscience of the federal judiciary be shocked by deliberate indifference,

because the use of such subjective epithets as "gross" "reckless" and "shocking"

sheds more heat than light on the thought processes courts must undertake in cases of

this kind. Deliberate indifference to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger, is enough." *Grubbs*, supra, 92 F.3d 894 at 900.

**B.    The Instant Case Can Be Readily Distinguished From Authority In The Ninth Circuit Which Identified Circumstances Where The State Created Danger Exception Did Not Apply.**

Defendants analogize the facts in the instant case to the facts of two Ninth Circuit decisions in which the Plaintiffs failed to meet the standards of the state created danger doctrine.

As set forth above, *Patel* can be distinguished from the facts of the instant case based on the "good intentions" and the mental state of the government actor. *Patel*, supra, 648 F.3d 965 at 976.

The second of such cases is *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007). In *Johnson*, the Plaintiffs were assaulted and injured by members of the crowd at a Seattle Mardi Gras celebration. At the annual celebration in 2001, some members of the crowd became increasingly belligerent and aggressive and the situation evolved into a significant public safety threat. In response, the Seattle Police Department revised its operations plan for the remaining evenings, essentially changing tactics to keep law enforcement personnel out of Pioneer Square, where the crowd was centered. Plaintiffs were attacked by violent individuals within the mob

and sued on the theory that the police's withdrawal created or increased a danger to them. *Id.* at 636. The Court held that "[I]n this case, the fact that the police at one point had an operational plan that might have more effectively controlled the crowds at Pioneer Square does not mean that an alteration to this plan was affirmative conduct that placed the Pioneer Square Plaintiffs in danger. The police did not communicate anything about their plans to the Pioneer Square Plaintiffs prior to the incident." *Id.* at 641.

*Johnson* presents a totally different set of facts than the instant case does. The decision that the claims in *Johnson* were based on was essentially the "switch from a more aggressive operation plan to a more passive one." *Id.* at 641. There was no specific action or interaction on the part of the Seattle Police alleged with either the victims or the wrongdoers. In the case at hand, the Santa Barbara deputies stood face to face with Elliot Rodger and communicated with him after being informed a mental health worker believed he posed a danger to others. Perhaps if the instant case was based on some change in tactics made by the SBCSD on the night in question (as opposed to the act of the welfare check), such as "we are too busy to conduct welfare checks tonight," their argument may be valid. Even though hypothetical policy change would probably be "disastrous in hindsight" (like in *Johnson*), such a set of facts may not support liability. It is because of the acts (and not the tactics) of the deputies in the case at hand that the danger was increased.

In the *Johnson* case, the Plaintiffs would have extended the duty to the entire Mardi Gras crowd. The Plaintiffs in this case do not content that the officers had a duty which ran to the public at large, only to those who resided behind closed doors with Rodger and were therefore exposed to the danger which was increased by the welfare check.

**C.   Because Plaintiffs Have Pleaded And Alleged Specific Facts Regarding Defendants Policies and Customs Plaintiffs Have Stated A Proper § 1983 *Monell* Claim Against The County.**

Defendants cite *Monell v. Department of Social Services*, 436 U.S. 658, 591 (1978), to claim that the SBCSD cannot be held vicariously liable for actions of their employees in this case. Defendants assert this despite the fact that this matter is at the pleading stage, where the Court must consider all allegations of the non-moving party contained in the complaint <u>as true</u> and view all facts and inferences <u>in the light most favorable to the pleader</u>. *Fajardo*, supra, 179 F.3d 698 at 699 (emphasis added). In making this argument, Defendants dismiss and ignore specific facts, as pleaded by Plaintiffs, including that "the acts and conduct of Defendants, as described above, were committed under color of state law, pursuant to official written and unwritten policy and custom of County and SBCSD." [¶44]. Plaintiffs have further pleaded "Said policy and custom included knowingly failing to adequately investigate individuals subject to a "wellness check," failing to adequately train employees on

investigative technique, failing to adequately supervise employees, and failing to warn potential victims about the dangerous propensities of individuals under investigation. County and SBCSD knew or should have known that serious injury would result from this custom and policy. [¶44].

Defendant cannot merely ignore the reality that Plaintiffs have pleaded direct and specific facts, including non-conclusory logical examples of such policies and customs, which meet the criteria of *Monell.* Plaintiffs have properly alleged a constitutional violation and set forth the proper basis for public entity liability.

## V.   CONCLUSION

For the reasons set forth above the Plaintiffs respectfully submit that the Defendants have failed to clearly establish that no material issue of fact exists. Plaintiffs thereby request that this Court deny the Defendants' Motion.


Dated:  October 5, 2015.         McNICHOLAS & McNICHOLAS, LLP

                                 BECKER LAW GROUP

                                 By:   /s/ Patrick McNicholas
                                       Patrick McNicholas
                                       David Angeloff
                                       Attorneys for Plaintiffs,
                                       JUNAN CHEN, KELLY YAO WANG,
                                       CHANGSHUANG WANG,
                                       JINSHUANG LIU, LICHU CHEN, and
                                       WENQUEI HONG

# DECLARATION OF SERVICE BY MAIL

I am a citizen of the United States and a resident of Los Angeles County. I am over the age of eighteen years and not a party to the within entitled action; my business address is 10866 Wilshire Boulevard, Suite 1400, Los Angeles, CA.

On <u>October 5, 2015</u>, I served a true copy of the within **PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS**, on the interested parties in this action by:

**X**    electronic transmission via CM/ECF to the persons indicated below:

Mary Pat Barry
Senior Deputy County Counsel
County of Santa Barbara
105 E. Anapamu Street
Suite 201
Santa Barbara, CA 93101
*Attorneys for County of Santa Barbara and*
*Santa Barbara County Sheriff's Department*

Eugene J. Egan, Esq.
Christopher A. Kanjo, Esq.
Manning & Kass
801 S. Figueroa Street, 15th Floor
Los Angeles, CA 90017
*Attorneys for Hi Desert Mobile Home Park LP (erroneously*
*Sued as "Capri Apartments at Isla Vista")*

William S. Kronenberg, Esq.
Kronenberg Law, P.C.
1999 Harrison Street
Suite 1450
Oakland, CA 94612
*Attorneys for Asset Campus Housing, Inc.*

**X**    (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on <u>October 5, 2015</u>, at Los Angeles, California.

/s/Millie A. Capellan
Millie A. Capellan