UNITED STATES DISTRICT COURT                                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.    **CV 15-1509-JFW (JEMx)**                          Date:  October 28, 2015

Title:      Junan Chen, et al. -v- County of Santa Barbara, et al.

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   Shannon Reilly                           None Present
   Courtroom Deputy                         Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**       **ATTORNEYS PRESENT FOR DEFENDANTS:**
            None                                         None

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS COUNTY OF SANTA BARBARA AND SANTA BARBARA COUNTY SHERIFF'S DEPARTMENT [filed 9/25/15; Docket No. 56]**

On September 25, 2015, Defendants County of Santa Barbara (the "County") and Santa Barbara County Sheriff's Department ("SBSD") (collectively, the "Santa Barbara Defendants") filed a Motion for Judgment on the Pleadings ("Motion").  On October 5, 2015, Plaintiffs Junan Chen, Kelly Yao Wang, Changshuang Wang, Jinshuang Liu, Lichu Chen, and Wenquei Hong (collectively, "Plaintiffs") filed their Opposition.  On October 9, 2015, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's October 26, 2015 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural History**

This action involves the tragic murders of the sons of Plaintiffs, Cheng-Yuan "James" Hong ("Hong"), Weihan "David" Wang ("Wang"), and George Chen ("Chen"), on May 23, 2014 in Isla Vista, California by Elliot Rodger ("Rodger").  The murders occurred in the apartment Rodger shared with Hong and Wang, who had been Rodger's roommates since September 2013.  First Amended Complaint ("FAC"), ¶ 36 and 41.  Chen was a friend of Hong and Wang who unfortunately was visiting them on the day of the murders.

Beginning as early as June 2011, while living in Isla Vista, Rodger began planning a "Day of Retribution."  FAC, ¶¶ 21 and 30.  As Rodger himself stated, his plan was to "wage a war against

all women and the men they are attracted to" by arming himself with weapons and killing young people in the streets of Isla Vista.  FAC, ¶ 30.  In early 2014, Rodger began making specific plans to carry out his "Day of Retribution."  He initially set April 26, 2014 as the date for his rampage, which he later changed to May 23, 2014.  FAC, ¶ 38.

In preparation for his "Day of Retribution," Rodger purchased a semi-automatic Glock 34 in December 2012 (FAC, ¶ 31) and a Sig Sauer P226 pistol in the Spring of 2013.  FAC, ¶ 33.  In April 2013, Rodger posted speech expressing hateful, angry, deeply misogynist, and racist content on various websites using his name.  FAC, ¶ 32.  For example, on one website, Rodger posted the following: "Today I drove through the area near my college and saw some things that were extremely rage-inducing; I passed by this restaurant and I saw this black guy chilling with 4 hot white girls.  He didn't even look good.  Then later on in the day I was shopping at Trader Joe's and saw an Indian guy with 2 above average White Girls!!!; One day incels will realize their true strength and numbers, and will overthrow this oppressive feminist system.  Start envisioning a world where WOMEN FEAR YOU."  *Id.*  Rodger also posted on an internet forum for male virgins; a site for failed pick-up artists; a site for bodybuilders; and Rodger's own YouTube channel.  *Id.*

After Rodger purchased his handguns and his internet postings, but before his May 23, 2014 rampage, SBSD deputies had three separate encounters with Rodger.  On July 21, 2013, SBSD deputies first encountered Rodger while investigating a report of a fight at an Isla Vista party on July 20, 2013 during which Rodger broke his ankle.  FAC, ¶ 34.  According to witnesses, Rodger arrived at the party in an intoxicated state, and became angry at a group of young women he believed were ignoring him.  *Id.*  When Rodger attempted to push one of the young women off of a ledge, a group of male students intervened and pushed Rodger off the ledge, breaking his ankle.  *Id.*  When SBSD deputies interviewed Rodger at the hospital on July 21, 2013, he told the SBSD deputies that he had broken his ankle when he was pushed off the ledge by a group of bullies.  FAC, ¶ 35.  However, all the witnesses that the SBSD deputies interviewed confirmed that Rodger was the only aggressor.  *Id.*  Based on the conflicting information obtained by the SBSD deputies as to the identity of the aggressor, the SBSD deputies conducted no further investigation.  FAC, ¶ 35.

On January 15, 2014, SBSD deputies had their second encounter with Rodger at his apartment when responding to a call by Rodger about an argument between Rodger and his roommates, Hong and Wang.  FAC, ¶ 37.  Rodger became annoyed at his roommates because he did not like the smell of their cooking, and Rodger responded by repeatedly hiding or taking their pots and pans so they could not cook.  *Id.*  Hong and Wang repeatedly asked, and then repeatedly demanded that Rodger return their property.  *Id.*  When Rodger refused to return their property, Hong took some candles and candle holders that belonged to Rodger and again demanded Rodger return his pots and pans.  *Id.*  Rodger responded by placing Hong under "citizen's arrest" and calling the SBSD.  *Id.*  Once the SBSD deputies arrived, they spoke to Hong, who informed the deputies that Rodger had taken or hidden his pots and pans.  *Id.*  The SBSD deputies did not investigate Hong's allegations, but did arrest Hong for petty theft.  *Id.*  SBSD deputies did not perform a background or gun registry check on Rodger, and did not search the internet for information about or posted by Rodger.  *Id.*

In April, 2014, Rodger uploaded additional videos on YouTube, including a video he entitled "Why do girls hate me?"  FAC, ¶ 39.  His videos contained speech expressing Rodger's jealousy

and rage toward women, minorities, and sexually active people. *Id.* The videos revealed Rodger to be an unstable, vengeful, jealous and dangerous person. *Id.*

On April 30, 2014, SBSD deputies had their final encounter with Rodger when they went to Rodger's apartment to conduct a "wellness check." This encounter was the result of a call from a mental health worker who had seen Rodger's videos and other online posts and believed Rodger was a danger to himself and others. FAC, ¶ 40. SBSD deputies interviewed Rodger outside of his apartment, and left after Rodger explained to them that whatever had prompted the wellness check was the result of a "misunderstanding." *Id.* SBSD deputies did not view Rodger's videos or other online postings either prior to or after speaking with Rodger; did not perform a background check of Rodger; did not perform a gun check; did not ask to enter his apartment; and did not ask to search his room. *Id.* After the wellness check, Rodger wrote in his "manifesto" that "[i]f they had demanded to search my room . . . That would have ended everything. For a few horrible seconds I thought it was all over. When they left, the biggest wave of relief swept over me . . . This incident made me realize that I needed to be extra careful. I can't let anyone become suspicious of me." *Id.*

Approximately three weeks after the wellness check, on May 23, 2014, Rodger murdered Hong, Wang, and Chen in their apartment. FAC, ¶ 41. After murdering Hong, Wang, and Chen, Rodger went on a deadly shooting rampage in Isla Vista, killing three people and wounding another fourteen.[1]

On March 2, 2015, Plaintiffs filed a Complaint against the Santa Barbara Defendants, Capri Apartments at Isla Vista ("Capri"), and Asset Campus Housing ("Asset"). On May 20, 2015, Plaintiffs filed a First Amended Complaint, alleging a cause of action against the Santa Barbara Defendants for violation of due process under the Fourteenth Amended (42 U.S.C. § 1983) and a cause of action for negligence against Capri and Asset. In their First Amended Complaint, Plaintiffs allege that the Santa Barbara Defendants and their agents and employees failed to conduct an adequate wellness check, which deprived Hong, Wang, and Chen of their right to life as guaranteed by the due process clause of the Fourteenth Amendment. FAC, ¶¶ 43 and 45.

On June 8, 2015, the Santa Barbara Defendants filed an Answer to Plaintiffs' Complaint. In their Motion, the Santa Barbara Defendants seeking judgment on Plaintiffs' First Amended Complaint on the grounds that the facts alleged in the First Amended Complaint demonstrate that Plaintiffs are not entitled to relief against the Santa Barbara Defendants.

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). "A Rule 12(c) motion is functionally identical to a motion pursuant to Fed. R. Civ. P. 12(b)(6)." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving

---

[1] After murdering Hong, Wang, and Chen, but before going on his shooting rampage, Rodger e-mailed his manifesto to his parents, family friends, and at least one therapist. *Id.*

party is entitled to judgment as a matter of law." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). As with motions brought pursuant to Rule 12(b)(6), in addition to assuming the truth of the facts plead, the court must construe all reasonable inferences drawn from those facts in the nonmoving party's favor. *See Lonberg*, 300 F. Supp. 2d at 945*; see also Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted).

### III. Discussion

#### A. Section 1983 Requirements

Plaintiffs bring their federal claim against the Santa Barbara Defendants under 42 U.S.C. § 1983. To succeed on their Section 1983 claim, Plaintiffs must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.1991).[2] Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) (citation omitted). In other words, Plaintiffs must show that the Santa Barbra Defendants' actions caused the deprivation of a constitutional right. 42 U.S.C. § 1983; *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir.1981). "The causation requirement of § 1983 . . . is not satisfied by a showing of mere causation in fact[;][r]ather, the plaintiff must establish proximate or legal causation." *Id.* The Ninth Circuit has explained: "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivations of which he complains." *Id.* (internal citation omitted).

#### B. Fourteenth Amendment Claims

---

[2] 42 U.S.C. § 1983, provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The sole issue in their Section 1983 claim against the Santa Barbara Defendants is whether the Santa Barbara Defendants deprived Hong, Wang, and Chen of a federally protected right.[3] FAC, ¶ 45. Specifically, Plaintiffs allege that the Santa Barbara Defendants deprived Hong, Wang, and Chen of their substantive due process rights under the Fourteenth Amendment. *Id.*

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law." *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 194 (1989). The Supreme Court has interpreted the language of the Due Process Clause as a limitation on the State's power to act, and not as a guarantee of certain minimal levels of safety and security. *Id.* at 195; *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768-69 (2005). The Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney*, 489 U.S. at 194. That is, the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.

The Supreme Court has determined that, generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. Accordingly, because Rodger was not a state actor when he murdered Hong, Wang, and Chen, Plaintiffs cannot state a claim against the Santa Barbara Defendants for violation of Hong's, Wang's, and Chen's due process rights under the Fourteenth Amendment. However, two exceptions to this general rule have been determined to apply in limited circumstances: (1) the "special-relationship" exception[4]; and (2) the "state-created danger" exception. *Patel v. Kent School District*, 648 F.3d 965, 971-72 (9th Cir. 2011).

In this case, Plaintiffs argue that their claim arises under the state-created danger exception. The state-created danger exception applies when a plaintiff can demonstrate that "'state action created or exposed an individual to a danger which he or she would not have otherwise faced.'" *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) (*quoting Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)). To allege a claim under this exception, the Ninth Circuit has recognized two clear requirements: (1) affirmative conduct by a state actor in placing a particular plaintiff in danger; and (2) the state acted with deliberate indifference to a known or obvious danger. *Patel*, 648 F.3d at 971-72. The "danger creation" basis for a claim, "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). Thus, when a claim is based on alleged law enforcement inaction, the danger-creation exception does not apply. *Johnson*, 474 F.3d at 641. In addition, state-created danger exception requires "proof of deliberate indifference to a known or

---

[3] It is undisputed that the SBSD deputies that conducted the wellness check on Rodger were acting under color of law.

[4] The special-relationship exception only applies when the State affirmatively acts to restrain an individual's freedom to act on his own behalf, such as by incarcerating or institutionalizing an individual. *DeShaney*, 489 U.S. at 200. In this case, Plaintiffs "are not alleging, for purposes of their federal claim, that a special relationship existed." Opposition, 10:5-6.

obvious danger, which is a higher standard than gross negligence because it requires a culpable mental state, meaning that the state actor must recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Lewis v. County of San Bernardino*, 2011 WL 6288100 (C. D. Cal. Dec. 14, 2011) (internal quotations and citations omitted).

      **C.**      **The Santa Barbara Defendants Are Entitled to Judgment on the Pleadings.**

            **1.**      **There Is No Affirmative Conduct by a State Actor.**

In the First Amended Complaint, Plaintiffs allege that the Santa Barbara Defendants violated the Fourteenth Amendment Due Process rights of Hong, Wang, and Chen by failing to conduct an adequate wellness check on April 30, 2014. However, there are no allegations in the First Amended Complaint that the Santa Barbara Defendants took any affirmative action on April 30, 2014 that placed Hong, Wang, or Chen in danger. In fact, in their Opposition, Plaintiffs concede that the "danger was not 'created' by" the Santa Barbara Defendants, and that Hong and Wang, as Rodger's roommates, were at risk and "were obviously the most vulnerable to any potential violence [Rodger] could inflict" long before the wellness check on April 30, 2014. Opposition, 16:8-10 and 17:3.

Instead, Plaintiffs argue that the SBSD deputies conducted an inadequate wellness check because they failed to watch Rodger's YouTube videos or view his other internet postings, failed to conduct a background or gun registry check on Rodger, and failed to ask to search Rodger's apartment and room. Plaintiffs argue that by failing to conduct an adequate wellness check, the SBSD deputies augmented, enhanced, or exacerbated the danger faced by Hong, Wang, and Chen, and that this increased risk of danger created by the SBSD deputies is sufficient to defeat the Santa Barbara Defendants' Motion and allow Plaintiffs to proceed with their claim. Opposition, 11:10-13 ("if the officer's actions augmented, enhanced or exacerbated the danger facing the decedents, Plaintiffs may prevail on this issue").

However, even accepting as true all of the facts relied on by Plaintiffs in support of their claim as to the inadequacy of the wellness check, Plaintiffs have failed to demonstrate that the SBSD deputies engaged in affirmative conduct that was more than a mere omission or failure to act or that the SBSD deputies' conduct left Plaintiffs' sons in a situation that was more dangerous than existed prior to April 30, 2014.

"In examining whether an officer affirmatively places an individual in danger, [the Court does] not look solely to the agency of the individual, nor [should it rest its] opinion on what options may or may not have been available to the individual. Instead, [the Court must] examine whether the officer left the person in a situation that was more dangerous than the one in which they found him." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006) (internal quotation and citations omitted); *see also Jamison v. Storm*, 426 F.Supp. 2d 1144, 1155 (W.D. Wash. 2005) (requiring more than an "omission or failure to act" to satisfy the first element of the danger exception). For example, in *Kennedy*, the Ninth Circuit found that by advising the neighbor of the molestation allegations made by the plaintiff without first warning the plaintiff, the officers involved "affirmatively created an actual, particularized danger [the plaintiff] would not otherwise have faced." *Kennedy*, 439 F.3d at 1063. In *Munger v. City of Glasgow Police Dep't.*, 227 F.3d 1082

(9th Cir. 2000), the Ninth Circuit permitted a claim to survive summary judgment where the evidence demonstrated that Munger died after officers ejected him from a bar when the outside temperature was below freezing, knowing that he was not dressed for such cold weather, was drunk and prevented by the officers from getting into or driving his truck or returning to the bar. Under those circumstances, the Ninth Circuit concluded that officers left Munger "in a situation that was more dangerous than the one in which they found him." *Id.* at 1086. Similarly, in *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 2011), a man became seriously ill on his porch, and his neighbors called 911 and requested medical assistance. When officers arrived, they examined Penilla and concluded he needed medical attention but moved him inside his house, locked the door, and cancelled the 911 call to paramedics. Shortly thereafter, he died. The Ninth Circuit affirmed denial of a motion to dismiss on qualified immunity grounds and concluded that the officers "allegedly took affirmative actions that significantly increased the risk facing *Penilla*." *Id.*

In contrast, there is no "affirmative act" when a government official allows a dangerous situation to develop or continue without intervention, even if the government official affirmatively chooses not to intervene. These cases rest on *DeShaney*'s insistence that a "state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process clause." In other words, if a plaintiff's Section 1983 claim would effectively impose a contrary requirement, it must fail. For example, in *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007), the Ninth Circuit affirmed an order granting summary judgment for the City on a danger creation claim brought by the plaintiffs, who were assaulted by members of a crowd at a Mardi Gras celebration.

Although there was no evidence of a history of violence during Mardi Gras celebrations, the police in response to escalating public violence prior to the celebration developed a plan to maintain the peace. After two peaceful nights prior to the celebration, the police reduced the number of officers patrolling the area. Unfortunately, violence broke out and expanded to the point where police officers were told to evacuate and stay away from the crowd. Although the officers successfully cleared the crowd, violence left one person dead and dozens injured. The plaintiffs alleged that under the danger creation doctrine, the police department was liable because they abandoned the plan for crowd control and instead decided to implement a passive plan to remain at the perimeter of the crowd. After its review of Ninth Circuit decisions and the Supreme Court's decision in *DeShaney*, the Ninth Circuit in *Johnson* held:

> In contrast to the plaintiffs in *Wood, Penilla, Munger, Grubbs* and *Kennedy*, the Pioneer Square Plaintiffs have failed to offer evidence that the Defendants engaged in affirmative conduct that enhanced the dangers the Pioneer Square Plaintiffs exposed themselves to by participating in the Mardi Gras celebration. The decision to switch from a more aggressive operation plan to a more passive one was not affirmative conduct that placed the Pioneer Square Plaintiffs in danger, because it did not place them in any worse position than they would have been had the police not come up with any operational plan whatsoever . . .
>
> Even if proved not the most effective means to combat the violent conduct of private parties, the more passive operational plan that the

> police ultimately implemented did not violate substantive due process because it "placed [the Pioneer Square Plaintiffs] in no worse position than that in which [they] would have been had [the Defendants] not acted at all."

*Johnson,* 474 F.3d at 641 (*quoting* DeShaney, 489 U.S. at 201); see *also Lewis v. City of Santa Barbara,* 2011 WL 6288100, *6 (Dec. 14, 2011) (granting motion to dismiss for failure to state a claim under the state-created danger exception where an officer did not prevent a suicide committed by arrestee 12 hours after he was released from custody even though an officer saw books about committing suicide and using firearms in decedent's car during vehicle search). In addition, in *Campbell v. State Dept. of Social & Health Services,* 671 F.3d 837, 847 (9th Cir. 2011), a developmentally disabled adult with known seizure disorder died after almost drowning in a bathtub in her group home. The Ninth Circuit held that while caregivers were responsible for her care and were suppose to monitor her regularly, "none of them acted affirmatively to place [her] in the way of a danger they had created." *Id.* Rather, the Ninth Circuit found that "a long bath was one of [her] favorite activities - one that she frequently enjoyed" and concluded that her "death was caused by the danger inherent in her own physical and mental limitations." *Id.*

After considering the relevant case law and the arguments of counsel, the Court concludes that Plaintiffs' claim is closer to those decisions finding no state created danger. Moreover, Plaintiffs' enhancement theory would effectively impose a requirement contrary to the affirmative act required by *DeShaney*, and, therefore, Plaintiffs' claim fails.

In addition, as the Santa Barbara Defendants correctly argue, even if the SBSD deputies somehow augmented, enhanced, or exacerbated the danger to Hong, Wang, and Chen by failing to conduct an adequate wellness check and that failure alerted Rodger that he should be more "careful" in carrying out his "Day of Retribution," that type of enhancement of the danger argument has been specifically rejected by the Ninth Circuit. *See Huffman v. County of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998) ("The danger-creation exception to *DeShaney*, does not create a broad rule that makes state officials liable under the *Fourteenth Amendment* whenever they increase the risk of harm to a member of the public"). This is particularly true when, as in this case, the SBSD deputies never had any contact with Hong, Wang, and Chen during the wellness check, and, thus, the SBSD deputies were not aware of any particular individuals that faced danger from Rodger. *See McKissen v. Leyendecker*, 2007 WL 2900425, *1 (E.D. Wash. Oct. 2, 2007) (granting motion to dismiss because state-created danger exception did not apply where the parole officer had no direct contact with the plaintiff and, thus, could not have affirmatively created the danger, and holding that "[i]n each Ninth Circuit case finding a state created danger existed, the state actor's direct contact with the victim affirmatively created the danger").

Therefore, the Court concludes that Plaintiffs have not and cannot allege facts sufficient to satisfy the affirmative conduct by a state actor element of the state-created danger exception. Accordingly, the Santa Barbara Defendants are entitled to judgment on Plaintiffs' Fourteenth Amendment claim.

### 2. The Santa Barbara Defendants Did Not Act with Deliberate Indifference.

In order to determine if Plaintiffs have satisfied the second prong of the state-created danger exception discussed in *Kennedy*, the Court "must decide the related issues of whether the danger to which" the Santa Barbara Defendants' exposed Plaintiffs' sons "was known or obvious, and whether [the defendants] acted with deliberate indifference to it." *Kennedy* at 1064. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). To establish that state officials acted with deliberate indifference to a danger they allegedly created, a plaintiff must show "(1) an unusually serious risk of harm, . . . (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk." *L.W. v. Grubbs, 92 F.3d 894, 900* (9th Cir. 1996) ("*Grubbs II*").

Plaintiffs have failed to adequately allege that the Santa Barbara Defendants "acted with deliberate indifference to the known or obvious danger." *Grubbs II*, 92 F.3d at 900. In arguing that the SBSD deputies conducted a "cursory and inadequate welfare check," Plaintiffs are merely alleging that the SBSD deputies acted negligently, not with deliberate indifference. Opposition, 20:17; *see also Patel*, 648 F.3d at 974 (holding that deliberate indifference "requires a culpable mental state" and "[t]he state actor must recognize . . . [an] unreasonable risk and actually intend . . . to expose the plaintiff to such risks without regard to the consequences to the plaintiff") (internal quotation omitted). However, negligence is less than deliberate indifference, and "[l]ess is not enough." *Grubbs II*, 92 F.3d at 900. Moreover, despite Plaintiffs' argument that "the risk of harm need not be particularized to a specific individual or individuals" in order to demonstrate deliberate indifference (Opposition, 17:25-26), Plaintiffs' argument is contrary to Ninth Circuit authority, which holds that the state-created danger exception involves danger to a particular individual or individuals. *See, e.g., McKissen*, 2007 WL 2900425, *3 ("Because each Ninth Circuit case finding a state-created danger involved danger to a particular plaintiff, and that is not the case here, dismissal is appropriate"). In this case, Plaintiffs only allege that the SBSD deputies knew Rodger to be a danger "to himself and others," not to Hong, Wang, and Chen. Thus, the Court concludes that Plaintiffs cannot demonstrate that the Santa Barbara Defendants acted with deliberate indifference that is necessary to satisfy the second prong of the state-created danger exception.

### 3. Plaintiffs Cannot State a *Monell* Claim.

In the First Amended Complaint, Plaintiffs allege that the Santa Barbara Defendants are responsible for Plaintiffs' injuries under Section 1983 because their official policies, practices, and/or customs caused Plaintiffs' injuries. FAC, ¶ 9. Plaintiffs also allege that the Santa Barbara Defendants are liable for the actions of its employees under a respondeat superior theory. *Id.*

42 U.S.C. § 1983 provides that "[e]very person who under color of any statute, ordinance, regulation, custom or usage, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Municipalities and other local government units are considered "persons" under Section 1983, and, therefore, may be liable for causing a constitutional deprivation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978) (holding that "[o]ur analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies"); *Long v. Cnty. of L.A.*, 442

F.3d 1178, 1185 (9th Cir. 2006). Because there is no respondeat superior liability under Section 1983, a municipality is liable only for injuries that arise from an official policy or long-standing custom. *Monell*, 436 U.S. at 694; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff must show "that a [county] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks omitted). In addition, a plaintiff must show that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* at 918; *Thompson v. Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are [*sic*] insufficient to establish custom"), *overruled on other grounds by Bull v. City & Cnty. of S.F.*, 595 F.3d 964, 981 (9th Cir. 2010) (*en banc*). A plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. *See Harris*, 489 U.S. at 388. A plaintiff alleging a failure-to-train claim must demonstrate: (1) deprivation of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the constitutional rights of the persons with whom [its police officers] are likely to come into contact"; and (3) the constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal quotation marks omitted, alteration in original).

In this case, because the Court concludes that there was no violation of Hong's, Wang's, or Chen's Fourteenth Amendment due process rights, there is no basis for *Monell* liability against the Santa Barbara Defendants. *See, e.g., Palmerin v. City of Riverside*, 794 F.2d 1409, 1414-15 (9th Cir. 1986). In addition, even if Plaintiffs could allege a constitutional violation, Plaintiffs' *Monell* claim against the Santa Barbara Defendants would still have to be dismissed. As stated above, a municipality cannot be held liable under Section 1983 on a respondeat superior theory. *See, e.g.*, *Helstern v. City of San Diego*, 2013 WL 3515963, at *3 (S.D. Cal. July 11, 2013) (holding that "a municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory") (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978)). Instead, as explained above, "Congress intended to hold municipalities liable only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Christie v. Iopa*, 176 F.3d 1231, 1234 (9th Cir. 1999) quoting *Monell*, 436 U.S. at 691. However, after amending their Complaint, Plaintiffs have still failed to identify any specific, formal policy, practice, or custom of the Santa Barbara Defendants that may have resulted in a violation of Hong's, Wang's, or Chen's civil rights. Moreover, Plaintiffs rely on the single incident involving the wellness check, which is insufficient to impose liability under *Monell*. In addition, Plaintiffs have failed to allege any facts that the Santa Barbara Defendants failed to properly train or supervise its employees. Therefore, the Court concludes that Plaintiffs have failed to allege a *Monell* claim.[5]

---

[5] In addition, the SBSD must be dismissed from Plaintiffs' Section 1983 claim for the independent reason that the SBSD is a municipal department of the County of Santa Barbara and, therefore, is not a properly named defendant in Plaintiffs' Section 1983 claim. *See, e.g.*,

Accordingly, the Court concludes that the Santa Barbara Defendants are entitled to judgment on the pleadings, and, because amendment is futile, Plaintiffs' cause of action against the Santa Barbara Defendants is dismissed without leave to amend, and this action is dismissed against the Santa Barbara Defendants with prejudice.[6]

## IV. Conclusion

For all the foregoing reasons, the Santa Barbara Defendants' Motion is **GRANTED**. Plaintiffs' cause of action against the Santa Barbara Defendants is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice** as to the Santa Barbara Defendants.[7]

---

*Brockmeier v. Solano County Sheriff's Dept.*, 2006 WL 3760276, *4 (E.D. Cal. 2006) ("Because the Solano County's Sheriff's Department is a municipal department of Solano County, the court therefore finds that the Sheriff's Department is not a properly named defendant for purposes of plaintiff's § 1983 claims"); *see also Armstrong v. Siskiyou County Sheriff's Dept.*, 2008 WL 686888, *7 (E.D. Cal. 2008) ("Plaintiff's claims against the Siskiyou County Sheriff's Department are in reality made against Siskiyou County").

[6] Plaintiffs have had ample opportunity to amend their Complaint, and have included additional facts in their Opposition that are not alleged in their First Amended Complaint. However, the Court concludes that even if the Court granted Plaintiffs leave to file a Second Amended Complaint to allege those additional facts, the Santa Barbara Defendants would still be entitled to judgment on the pleadings. For example, Plaintiffs state in their Opposition that it was obvious to the SBSD deputies during the wellness check that Rodger shared his apartment with roommates, and that Hong and Wang were in a position of safety during the wellness check because they were out of the apartment. Opposition, 16:2-13. Plaintiffs also state that Rodgers took down his YouTube videos after the wellness check, so as to not arouse suspicion, and began keeping a loaded handgun near him at all times. Opposition, 16:24-17:1. However, none of these additional facts change the fundamental fact that the SBSD deputies did not take any affirmative action to place Hong, Wang, or Chen in danger. Thus, any amendment would be futile.

[7] In the First Amended Complaint, Plaintiffs also allege that Hong's, Wang's, and Chen's Fifth Amendment due process rights were violated. However, the due process clause of the Fifth Amendment only applies to actions of the federal government, and does not apply to the actions of state or local governments. *Lee v. City of Los Angeles,* 250 F.3d 668, 687 (9th Cir. 2001). Plaintiffs do not, and certainly cannot, allege that any of the Santa Barbara Defendants are federal actors. Therefore, the Court concludes that Plaintiffs have failed to state a due process claim under the Fifth Amendment, and this claim is **DISMISSED without leave to amend**. In addition, Plaintiffs allege that Hong's, Wang's, and Chen's Fourteenth Amendment equal protection rights were violated. However, Plaintiffs have failed to allege that the Santa Barbara Defendants acted with an intent or purpose to discriminate against Hong, Wang, or Chen based on their membership in a protected class, or even that they are members of a protected class. Because the SBSD deputies were not aware of the existence of Hong, Wang, and Chen during the wellness check, the SBSD deputies could not have discriminated against them, and Plaintiffs' discrimination claim necessarily fails. Therefore, the Court concludes that Plaintiffs have failed to state a claim alleging a violation of equal protection under the Fourteenth Amendment, and this claim is **DISMISSED without leave to amend**.

In light of the fact that the Court has dismissed the only claim over which this Court has original jurisdiction, and after considering judicial economy, convenience, fairness, and comity, and with the consent of the parties, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3); *See Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988)) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims.'"). Therefore, all state law claims alleged in Plaintiffs' First Amended Complaint are **DISMISSED without prejudice**. Accordingly, Plaintiffs will have an opportunity to pursue those claims in state court.

IT IS SO ORDERED.